## State of Connecticut *v.* James Reardon

House, C. J., Cotter, Bogdanski, Longo and Barber, Js.

Argued January 6—decision released April 5, 1977

*David S. Golub,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

COTTER, J. The defendant was charged with unlawfully possessing marijuana with intent to sell or dispense it in violation of Public Acts 1973, No. 73-681, § 26 (a) (General Statutes § 19-480) and, in a second count, with having marijuana under his control in violation of Public Acts 1972, No. 72-278, § 26 (b) (General Statutes § 19-481). In this appeal from his conviction on both counts he has briefed and argued error in the admission of certain evidence and in the court's instructions to the jury.

In the course of the trial, Dr. Charles N. Reading, one of three toxicologists employed by the state department of health, testified that, in his opinion, samples of material seized from the defendant under a search warrant were marijuana.[1] The defendant's counsel objected and took exception to the admission

[1] The inventory of this material included: nine one-ounce cellophane bags containing plantlike material; three cellophane bags containing plantlike material; one brown paper bag containing plantlike material; two glass jars each containing one green plant; two plastic containers of seeds; a plastic bag containing one hand-rolled cigarette; a green water pipe containing residue; a plumbing fixture used as a pipe containing residue; and an ashtray containing seeds, cigarette butts and a handrolled cigarette. Dr. Reading further testified that these samples contained tetrahydrocannabinols (THC), the hallucinogenic substance in marijuana proscribed by § 19-450a (a) (C) (17) of the General Statutes.

of Dr. Reading's identification testimony as hearsay "on the basis that this is not the man who performed the tests. Miss Pernitis is the individual who performed the test. And I think any testimony with respect to this man is totally hearsay." The defendant claims in his brief and argument on appeal in this court that "Dr. Reading's conclusions were undeniably unsupported hearsay." We do not agree.

The state toxicological laboratory, pursuant to § 19-483 of the General Statutes, is under the direction of the state's chief toxicologist, who "shall establish the standards for analytical tests to be conducted with respect to controlled drugs . . . by qualified professional toxicologists and chemists operating at his direction and shall have the general responsibility for supervising such analytical personnel in the performance of such tests." It is staffed by three toxicologists, including Dr. Reading, and twenty-four chemists, and receives approximately 20,000 cases each year. The chemists perform the actual analyses of material under the supervision of the toxicologists. In each case a toxicologist takes the material to be analyzed, gives it to the chemist involved, directs the work to be done, thereafter receives the analyst's report, discusses the results with the chemist and makes an "independent decision as to what has been accomplished."

Dr. Reading testified at length on direct and cross-examination as to the manner in which drug identifications were conducted in the state toxicological laboratory in this and other similar cases.[2]

---

[2] The defendant did not dispute Dr. Reading's qualifications as an expert witness; or the fact that the material seized under the search warrant was the same substance that was tested. See *State* v. *Johnson*, 162 Conn. 215, 229–31, 292 A.2d 903.

A microscopic test, a thin-layer chromatography test and a chemical test were conducted. He readily admitted under cross-examination that he did not see the results of the microscopic test conducted by the chemist, Miss Pernitis, that this test was not absolute and that probably hundreds of other plants have cystolithic hairs. The thin-layer chromatography test separates the chemically active ingredients of the sample material upon a small, treated celluloid plate using a volatile solvent; a plate using the sample material is prepared simultaneously with a plate using a known marijuana sample as a standard, so that the two plates can be visually compared. The chemical test treats the separated ingredients with a developer which turns any THC present a distinctive pink color. Dr. Reading testified that the thin-layer test is a specific test indicative of marijuana containing THC, that he personally observed the developed plates and that this test alone is sufficient to establish the presence of marijuana while the microscopic test is not absolute.

Because Dr. Reading, in answer to a question on cross-examination, stated: "My opinion is based upon the summation of all the examinations," the defendant argues: "Thus, it is evident that at least part of Dr. Reading's opinion was based solely on Miss Pernitis' report to him of her results." Even though at that point the defendant concedes that at least a part of that opinion was so based, we do not agree that it was improperly admitted. There was testimony by Dr. Reading before the jury that he had personal knowledge upon which to rely in forming his opinion, including personal knowledge of the identity of the tested material, since he received it from the safe and gave it to the chemist for testing;

personal knowledge of the procedures used to identify the material, since he directed the chemist as to what tests should be done; most importantly, he personally observed the results of the thin-layer chromatography and chemical tests, which he testified conclusively identified the presence of marijuana containing THC. He also testified, inter alia, that he had examined plantlike material for the presence of marijuana literally thousands of times, that he observed Miss Pernitis as she performed the tests although he did not see each detail, that her desk was approximately twelve feet from his and that she brought him the rough notes from which the final report was completed. He also testified that he personally supervised and examined tests which were completed by her. See *State* v. *Brown,* 169 Conn. 692, 703–706, 364 A.2d 186. The jury are the judges of the credibility of witnesses and may accept or reject their testimony. This is true whether there seems to be a contradiction between different witnesses or different statements made by the same witness since it is their province to determine credibility and the effect of testimony which ordinarily is the jury's exclusive function; and the court cannot substitute its judgment for theirs. *Henry* v. *Bacon,* 143 Conn. 648, 651, 124 A.2d 913; *Castaldo* v. *D'Eramo,* 140 Conn. 88, 93, 98 A.2d 664.

It was not error to admit the opinion of Dr. Reading, in any event, in view of the context of his testimony as a whole. Under the facts established in this case, the opinion of Dr. Reading, a state toxicologist, whose qualifications as an expert were not in issue, was admissible although based in part upon a test or tests conducted by an expert, a chemist, Miss Pernitis, upon which he could reasonably rely and where there was reasonable necessity

for it in accordance with laboratory procedures adopted and undertaken pursuant to his supervision and direction; especially since, under the circumstances of this case, not only was his professional opinion founded in part upon routine tests and reports directed and supervised by him but also in part upon his firsthand personal knowledge and observation of the substance in question. *Brown* v. *United States,* 375 F.2d 310, 318 (D.C. Cir.); see *United States* v. *Morrison,* 531 F.2d 1089, 1094–95 (1st Cir.); *United States* v. *Harper,* 460 F.2d 705 (5th Cir.); *Jenkins* v. *United States,* 307 F.2d 637, 641, 642 (D.C. Cir.) (en banc); *State* v. *Salter,* 162 N.W.2d 427 (Iowa); McCormick, Evidence (2d Ed.) § 15; see also 31 Am. Jur. 2d, Expert & Opinion Evidence, § 42; 30 Am. Jur. 2d, Evidence, §§ 991 et seq.; annot., 19 A.L.R.3d 1008; cf. *Caslowitz* v. *Roosevelt Mills, Inc.,* 138 Conn. 121, 125–26, 82 A.2d 808. It has been held that there is no rule that facts proven under exceptions to the hearsay rule, though received in evidence, must be denied all evidentiary value where there is a reasonable necessity for such an exception, and where it is supported by an adequate basis for assurance that that evidence has those qualities of reliability and trustworthiness attributed to other evidence admissible under long-established exceptions to the hearsay rule without violating constitutional rights. *Kay* v. *United States,* 255 F.2d 476, 480–81 (4th Cir.).

The holding herein is to be distinguished from the rule in cases such as *Brown* v. *Blauvelt,* 152 Conn. 272, 205 A.2d 773, wherein the expert opinion of a doctor was held inadmissible where he was not being consulted for the purposes of advice or treatment, but merely for the purpose of enabling him to give his opinion as a witness.

The defendant further claims that he was denied his "constitutional right to confrontation" guaranteed by the Connecticut and United States constitutions, citing article first, § 8, of the Connecticut constitution and the fifth amendment to the federal constitution. The right to confrontation, however, is guaranteed by the sixth amendment of the United States constitution. In 1965, in *Pointer* v. *Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923, the Supreme Court ruled that the fourteenth amendment made the confrontation clause obligatory upon the states. See *State* v. *Bugbee,* 161 Conn. 531, 534, 290 A.2d 332; 21 Am. Jur. 2d, Criminal Law, § 336. Thereafter, in *Dutton* v. *Evans,* 400 U.S. 74, 91 S. Ct. 210, 27 L. Ed. 2d 213, it decided that a murder defendant's right of confrontation was not violated by the use against him of a nontestifying declarant's hearsay statement which was permitted by a Georgia statute as an exception to the hearsay rule. In *Mancusi* v. *Stubbs,* 408 U.S. 204, 216, 92 S. Ct. 2308, 33 L. Ed. 2d 293, two years later, the court followed the rule established in *Dutton* and, upon a challenge by the accused that he was denied his sixth and fourteenth amendment right to confront a witness, ruled that there was no constitutional error in permitting prior-recorded testimony of an unavailable witness to be read to the jury at a second trial of the accused since the prior testimony bore "indicia of reliability" that would afford "the trier of fact a satisfactory basis for evaluating the truth of the prior statement." The jury's consideration of Dr. Reading's testimony, which we have held was admissible and which bore strong indicia of reliability, and upon which the defendant had a full and fair opportunity to cross-examine, did not deprive the defendant of the right

of confrontation guaranteed by our state or federal constitutions. See *State* v. *Hayes,* 127 Conn. 543, 597–99, 18 A.2d 895; *State* v. *Torello,* 103 Conn. 511, 515, 131 A. 429; *Dutton* v. *Evans,* supra; *Mancusi* v. *Stubbs,* supra; *Kay* v. *United States,* 255 F.2d 476, 480–81 (4th Cir.), citing *State* v. *Torello,* supra; McCormick, Evidence (2d Ed.) § 252.

The remaining claim of error pursued in the brief relates to the court's charge to the jury. The defendant made no request to charge and took no exception following the charge as required by § 249 of the Practice Book. He contends, however, that "failure to object will not bar appellate reversal where, as here, 'the defendant's constitutional rights have been violated by the charge complained of,'" citing *State* v. *Van Valkenburg,* 160 Conn. 171, 174, 276 A.2d 888; *State* v. *Evans,* 165 Conn. 61, 67, 327 A.2d 576. The basic thrust of the defendant's claim is that the trial court's charge was not in conformity with the definition of possession adopted by our court; it "failed to inform the jury that a general intent and/or knowledge is required before possession may be deemed unlawful"; and the instructions failed to specify that the defendant must also have known that the substances were marijuana.

The evidence of the defendant's possession with intent to sell or dispense included, inter alia, the seized plant material identified by Dr. Reading as marijuana, some of which was packed in small plastic bags inside a larger plastic bag; cigarette holders, or "roaches," a plastic pipe and a water pipe, and a scale. At the time of the search of the defendant's apartment the accused, his wife and six other persons were present in the apartment. The defendant and several other men were sitting

around the kitchen table, with the roaches and pipes on the table, and "there was a heavy smell of marijuana in the room." The court told the jury that the state must prove every element necessary to constitute the crimes charged against the accused so that as to each count the state must prove the essential elements of that crime to find him guilty. The court read the pertinent portion of each applicable statute defining the crime with which the defendant was charged and correctly instructed the jury as to the first count, unlawful possession with intent to sell, that possession means to have physical possession or otherwise to exercise dominion or control over tangible property and quoted the definitions of "sale" and "dispense" from the statute. Public Acts 1973, Nos. 73-681, § 1 (13), and 73-681, § 1 (50). The court also defined and explained the meaning of "intention." The court then added: "Now, you heard the arguments of both sides, you have heard the state's argument as to all this equipment that was found in here and the purpose for which it could be used and you have heard the defense's argument that there was no money involved and that there was no evidence that any of these people intended to sell any of this marijuana to any of them. And 'sell,' of course, is defined under the statute."

The court continued, concerning the statute relative to unlawful control, to instruct the jury on the meaning of the words "possession" and "control." The court then stated: "It is necessary to show that the defendant had knowledge of the fact that these items were there. Of course, if he had no knowledge of them whatsoever, why then he would not have either possession or control and, of course, he would not be guilty under those circumstances."

In view of the defendant's failure to request to charge or to take an exception to the instructions as given, we can find no error. Reading the charge as a whole it is understandable why no exception was taken to it since counsel who tried the case was well aware of the issues that were involved under the facts of the case and ostensibly was satisfied with the instructions given on the issues which are now raised on appeal. We agree that if a request to charge or an exception had been taken, that to establish that the defendant had possession of narcotics it was necessary to prove that he had exercised dominion and control over the substance, had knowledge of its presence and had knowledge of its narcotic character, it would have been incumbent upon the court to give such a more precise charge; as approved in *State* v. *Williams,* 169 Conn. 322, 335, 363 A.2d 72; see *State* v. *Corvo,* 172 Conn. 414, 415, 374 A.2d 1050. Under the circumstances, we cannot conclude that the defendant was deprived of a fundamental constitutional right and a fair trial. See *State* v. *Rice,* 172 Conn. 94, 101, 374 A.2d 128; *State* v. *Evans,* 165 Conn. 61, 67–70, 327 A.2d 576; *Palos* v. *United States,* 416 F.2d 438, 440 (5th Cir.).

There is no error.

In this opinion the other judges concurred.