STATE OF CONNECTICUT *v.* PERRY HAWKINS, JR.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued June 14—decision released August 30, 1977

*E. Eugene Spear,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

HOUSE, C. J.   The defendant appealed from a judgment of the Superior Court rendered September 13, 1974, on a jury verdict of guilty returned on an information charging him with three counts of selling cocaine in violation of 1973 Public Acts, No. 73-681, § 26 (a) (General Statutes § 19-480 [a]), and one count of controlling cocaine in violation of 1972 Public Acts, No. 278, § 26 (a) (General Statutes § 19-481 [a]).   He was sentenced to the correctional institution at Somers for an effective term of not less than ten years nor more than twenty years.   Although in his preliminary statement of issues the defendant made numerous claims of error, he has briefed only two of them, asserting that the court erred in refusing to charge the jury on entrapment and in admitting the testimony of a toxicologist concerning the analysis of substances which the state claimed were cocaine.   The claims of error which have not been briefed are considered abandoned.   *State* v. *Crawford,* 172 Conn. 65, 66, 372 A.2d 154; *State* v. *Ruiz,* 171 Conn. 264, 265, 368 A.2d 222.

There was evidence from which the jury could have found the following facts:   Charles Walkley worked as an undercover narcotics agent for the southwest regional crime squad from September, 1973, through April, 1974.   On March 30, 1974, after reporting to headquarters in Bridgeport, he drove to Stamford at approximately 10:30 a.m. to buy narcotics.   He arrived at the Duchess Restaurant at

about 12:30 p.m. and met with Melvin Collins, whom he had previously known. Stamford police officer Michael Moon was covering him. After a discussion with Collins about purchasing narcotics, Walkley then met the defendant, Perry Hawkins, Jr. Walkley had never met or seen the defendant before. Walkley and the defendant were in Walkley's automobile in the presence of Collins conversing about narcotics sales when Walkley told the defendant that he understood the defendant could find some cocaine for him. The defendant said he could and Walkley agreed to buy $75 worth. Pursuant to instructions from the defendant, Walkley drove to 20 Orchard Street in Stamford. When the three men arrived there, the defendant left the car, entered the house and returned saying that it would be a few minutes because his sister was packaging it. The defendant again left the car and returned with a tinfoil packet containing a white powder substance. After observing the contents of the packets, Walkley paid the defendant $75. Walkley then drove back to the Duchess Restaurant, taking with him the defendant and Collins. Before the defendant left Walkley, he asked him if he would be back for more. Walkley said he would get in touch with the defendant if the "coke" was good. The defendant then wrote his phone number on a piece of paper for Walkley. Later the same day, Walkley met with covering officer Moon and examined several photographs Moon had brought with him. Walkley selected a photograph of the defendant as the man from whom he had purchased the narcotics earlier in the day.

Walkley subsequently, by arrangement, met with the defendant on two additional days, April 1, 1974, and April 3, 1974, and on each occasion purchased cocaine from him.

The evening before the second transaction on April 1, 1974, Walkley telephoned the defendant at the number the defendant had given him and arranged to meet the defendant the next morning in front of the Duchess Restaurant. Walkley's examination of the Southern New England Telephone Company book revealed that the number he had been given was listed to 20 Orchard Street in Stamford. When they met, the defendant entered Walkley's car, and Walkley expressed his interest in making another identical purchase. Walkley, again covered and observed by Officer Moon, followed the defendant's car to Orchard Street. En route, the cars were joined by a car driven by the defendant's sister, Patricia Parham. Walkley parked his car and waited while the defendant and his sister entered the house together. The defendant came out shortly, explaining that it would be a few moments. He, thereafter, returned and gave Walkley the cocaine in exchange for $83 telling Walkley to contact him should he want more.

The third transaction occurred on April 3, 1974. Walkley called the number previously given to him and discussed a $75 purchase with the defendant. The defendant declined to go and meet Walkley stating that Walkley could come right to his house and pick up the merchandise. Walkley drove to Orchard Street, again covered by Officer Moon. There the defendant handed Walkley a foil packet containing cocaine in exchange for $75.

After each transaction, Walkley returned to Bridgeport where he field tested and processed the contents of the packets he had purchased from the defendant which were then transmitted to the state toxicological laboratory where, upon analysis, they were each found to contain cocaine.

The defendant's first claim is that the court erred in refusing to charge the jury on the law of entrapment, although the defendant filed a request for such a charge. In *State* v. *McNally,* 173 Conn. 197, 377 A.2d 286, we had recent occasion to discuss the doctrine of entrapment, the statute relating to it, General Statutes § 53a-15,[1] and our decisions on that defense since it was first argued in this court in *State* v. *Marquardt,* 139 Conn. 1, 5, 89 A.2d 219. It is unnecessary to repeat what we said so recently in the *McNally* case about the defense of entrapment. In that case, the defendant admitted the sales of the proscribed drug but claimed that he had made the sales at the request of the undercover officer who made the purchases and that he would not have made the sales if he had known that the purchaser was a policeman. We expressed some doubt that in the circumstances of that case the defendant was entitled to the charge on entrapment which the court gave, but there was at least a modicum of evidence that the defendant was induced to commit a crime which he did not contemplate and would not have committed if it had not been for the inducement of the undercover officer. In the present case, however, we find no evidence whatsoever which would require a charge on entrapment and the defendant's brief contains no reference to any, although § 631A (c) (1) of the Practice Book requires that when error is claimed in the trial court's refusal to charge as requested the party claiming error shall print in his brief "in

---

[1] "[General Statutes] Sec. 53a-15. ENTRAPMENT AS DEFENSE. In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was induced to do so by a public servant, or by a person acting in cooperation with a public servant, for the purpose of institution of criminal prosecution against the defendant, and that the defendant did not contemplate and would not otherwise have engaged in such conduct."

narrative form any evidence which he claims would entitle him to such charge, with appropriate references to the page or pages of the transcript." The record and briefs do disclose that not only did the defendant not admit that he had committed any crime but also that he did not testify at all and presented no witnesses in his defense. There was no evidence which raised any issue of inducement or entrapment. The evidence discloses nothing more than a simple request on the part of the officer that the defendant break the law and that alone is not "inducement" which would support a defense of entrapment. *State* v. *Whitney,* 157 Conn. 133, 136, 249 A.2d 238; *State* v. *Avery,* 152 Conn. 582, 584, 211 A.2d 165; *State* v. *Marquardt,* supra, 6. Under the circumstances, the court properly instructed the jury that in the absence of any substantial evidence of an illegal inducement or an admission by the defendant that he had committed the offenses charged in the information, the defense of entrapment was not available to him, and that the jury should not consider the defense of entrapment and the claim of the defendant advanced in his argument that the defendant was induced to commit a crime which he otherwise would not have committed.

Under our former practice, where findings were necessary in appeals in jury cases it was incumbent upon the parties to file claims of proof with appropriate references to pages of the transcript. (1963 Practice Book §§ 629—631; Form 603). In *State* v. *DaVila,* 150 Conn. 1, 183 A.2d 852; *State* v. *Marquardt,* supra; and *State* v. *Avery,* supra, all appeals taken under the former practice, we discussed the circumstances in which a charge on entrapment is required and noted that we would look to the claims of proof to see if it were required.

We observed that in the *DaVila* and *Marquardt* cases the accused admitted the commission of a crime and that since there was substantial support for the defendants' contentions that they were induced by police officers to commit crimes in which they would not otherwise have engaged except for such inducement, they were entitled to a charge on entrapment. We stated in *Marquardt* (p. 7): "Where there is evidence on the issue of entrapment as to which reasoning minds might disagree, the question is one of fact to be submitted to the jury" and "[a]ccordingly, where there is such a conflict of evidence and the defense of entrapment is claimed, the question must be submitted to the jury for solution." On the other hand, in the later *Avery* case, we noted (p. 584): "In the case now before us, however, the defendant's claims of proof do not admit the commission of a crime; rather, they indicate a complete denial of any connection with the crime. Thus, the claims of proof do not require a charge on entrapment." While under our present practice we no longer require findings and claims of proof in appeals in jury cases; Practice Book, c. 27; we do require, as we have already noted, that a party claiming error in a refusal to charge print in his brief in narrative form any evidence which he claims would entitle him to such a charge, with appropriate references to the page or pages of the transcript. Practice Book § 631A (c) (1). This serves the same function as the claims of proof which were formerly required and since, as in *State* v. *Avery,* supra, there is in the present case no evidence that the defendant either admitted the commission of a crime or that he was induced by the police to commit a crime in which he would not have engaged

except for such inducement, the court did not err in refusing to charge the jury on the doctrine of entrapment.

The defendant's remaining claim of error—that the court erred in admitting the testimony of Charles N. Reading, a toxicologist employed by the state department of health, that the substances which the defendant sold to Officer Walkley were cocaine—requires but brief comment. While the present appeal was pending, we decided the case of *State* v. *Reardon,* 172 Conn. 593, 376 A.2d 65, in which the same issue was raised on similar operative facts concerning the testimony of the same witness, Reading. As in the *Reardon* case, Reading did not perform the tests himself but personally supervised the work of the examining chemist, directing her what to do and observing and examining the results, from which he concluded that without doubt the substances in question were cocaine. For the same reasons that we found no error in admitting similar evidence in the *Reardon* case, we find no abuse of the court's discretion in admitting Reading's testimony in this case.

There is no error.

In this opinion the other judges concurred.