James **REARDON**

v.

John R. **MANSON.**

and

Perry **HAWKINS**

v.

Richard M. **STEINERT.**

Civ. Nos. H–77–240, H–77–497.

United States District Court,
D. Connecticut.

Sept. 18, 1985.

David Golub, Silver, Golub & Sandak, Stamford, Conn., for plaintiff.

Richard F. Jacobson, Frederick W. Fawcett, Asst. Attys. Gen., Bridgeport, Conn., for defendant.

### RULING ON APPLICATION FOR HABEAS CORPUS

BLUMENFELD, Senior District Judge.

These applications for writs of habeas corpus are before the court on remand from the Court of Appeals for the Second Circuit. *Reardon v. Manson,* 644 F.2d 122 (1981). Familiarity with the Court of Appeals' opinion, with the previous opinion of this court, *Reardon v. Manson,* 491 F.Supp. 982 (1980), and with the opinions of the Connecticut Supreme Court, *State v.*

*Reardon,* 172 Conn. 593, 376 A.2d 65 (1977); *State v. Hawkins,* 173 Conn. 431, 378 A.2d 534 (1977), is assumed. The issue presented by these applications is whether petitioners' constitutional right to confront and cross-examine adverse witnesses, guaranteed by the sixth and fourteenth amendments to the Constitution, was violated by the admission at their trials on drug charges of certain testimony by a state toxicologist, one Dr. Charles Reading.

*Prior Proceedings*

Petitioners were each convicted in state court of drug offenses, Reardon's involving marijuana, and Hawkins' involving cocaine. The convictions were affirmed by the Connecticut Supreme Court. In each case, Dr. Reading testified, over defendant's objection on the ground that the testimony was hearsay, as to the nature of substances seized from the defendant and tested in the state toxicological laboratory. In *State v. Reardon,* the Connecticut Supreme Court upheld Reardon's conviction, declaring:

> The jury's consideration of Dr. Reading's testimony, which we have held was admissible and which bore strong indicia of reliability, and upon which the defendant had a full and fair opportunity to cross-examine, did not deprive the defendant of the right of confrontation guaranteed by our state or federal constitutions.

172 Conn. at 599–600, 376 A.2d 65. Hawkins' conviction was affirmed in reliance on *Reardon.* 173 Conn. at 438, 378 A.2d 534.

On petitioners' applications for writs of habeas corpus, this court held, after a hearing, that petitioners' sixth amendment rights had been violated by the admission of Dr. Reading's testimony. Dr. Reading testified that in reaching his opinion as to the nature of the tested substances, he relied on tests performed by chemists under his supervision. I first determined that Dr. Reading's testimony was hearsay.

> The testimony of Dr. Reading, in effect, merely repeated the information given him by his chemists. As to some of the tests, he simply reiterated the chemists' analysis with no first-hand knowledge of the test results. By passing along a chemist's assurance that a particular test yielded a positive result, Dr. Reading was only narrating hearsay. As to other tests where he himself observed the results of the experiments, he still was required to assume that the substances tested were in fact the substances in question, that the tests had been performed correctly, and that the appropriate standards had been used. When he examined the slides created by his chemists and then based his conclusion on the slides, he nonetheless still passed along the chemist's hearsay declaration that the tests were in fact properly conducted on the appropriate substances. As to these facts Dr. Reading had no independent knowledge.

491 F.Supp. at 985. Next, I held that Dr. Reading's testimony was crucial to the state's case (the parties having stipulated that Dr. Reading's testimony was the only evidence as to the nature of the substances), that the prosecution had not demonstrated the unavailability of the hearsay declarants, and that the other indicia of reliability necessary to satisfy the Confrontation Clause were not present. 491 F.Supp. at 986–88. *See, e.g., United States v. Oates,* 560 F.2d 45, 81 (2d Cir.1977). I therefore ordered that the writ issue unless petitioners were granted new trials within 60 days.

While the state's appeal from this court's decision was pending, the Supreme Court decided *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). In that case, it was held that a habeas court should include in its decision the reasoning which led it to decline to defer to the state court's factfinding. The Court referred specifically to 28 U.S.C. § 2254(d), which is set forth in the margin.[1] After *Sumner,* it is clear

---

1. 28 U.S.C. § 2254(d) provides:

   (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the ap-

that a federal district court granting a habeas application must explain which of the eight factors listed in section 2254(d) justifies its lack of deference to the state court's factual determinations.

The Court of Appeals, in its decision remanding these petitions, noted that this court's ruling did not comply with *Sumner*'s requirement. The Court of Appeals found that this court's factual determinations conflicted with those of the Connecticut Supreme Court in several respects.

Judge Blumenfeld treated the chemists as extrajudicial declarants. The Supreme Court of Connecticut regarded them to be collectors of trustworthy scientific data who performed testing procedures in keeping with their prescribed duties. The Connecticut court found the scientific facts gathered by the chemists under the direction and supervision of the expert toxicologist were reliable and trustworthy. The district court found that no indicia of reliability could be assigned to the extra-judicial declarations of the claimants who performed the tests. The state court found the results of the thin layer chromatography and chemical tests were personally observed by Dr. Reading. The district court found

that Dr. Reading's opinion, based on these results, was founded on assumptions that were unsupported in the evidence. The state court determined there was reasonable necessity for Dr. Reading's reliance on the findings of the chemist Pernitis. The federal court was persuaded that the witnesses were deliberately by-passed by the State to advance the interests of the prosecution.

644 F.2d at 127–28.

In the interim since the decision of the Court of Appeals, petitioners and the state have submitted new memoranda, and the court has carefully considered whether the Connecticut Supreme Court's factual determinations were "fairly supported by the record." 28 U.S.C. § 2254(d)(8). The court will first consider this issue, then turn to the constitutional question raised by petitioners.

*Factfinding in the State Court*

According to the Court of Appeals, this court "treated the chemists as extra-judicial declarants," while "[t]he Supreme Court of Connecticut regarded them to be collectors of trustworthy scientific data who performed testing procedures in keeping with their prescribed duties." 644 F.2d

plicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

at 127–28. A close reading of the Connecticut Supreme Court's opinion in *Reardon,* however, reveals that although that court considered Dr. Reading's testimony admissible, it recognized that the chemist was an extra-judicial declarant. The Connecticut Court held that Dr. Reading's testimony was admissible as expert testimony, although his opinion was based in part on information given him by the chemist, whom the court also considered to be an expert. The Connecticut Court concluded its discussion of the admissibility of Dr. Reading's testimony by stating:

> It has been held that there is no rule that facts proven under exceptions to the hearsay rule, though received in evidence, must be denied all evidentiary value where there is a reasonable necessity for such an exception, and where it is supported by an adequate basis for assurance that that evidence has those qualities of reliability and trustworthiness attributed to other evidence admissible under long-established *exceptions to the hearsay rule* without violating constitutional rights. *Kay v. United States,* 255 F.2d 476, 480–81 (4th Cir. [1958]).

172 Conn. at 598, 376 A.2d 65 (emphasis added).

The Connecticut Supreme Court evidently recognized that Dr. Reading's narration of the results of tests performed by another was admissible, if at all, only under an exception to the hearsay rule; and that Dr. Reading's expert opinion, to the extent it was based on information obtained from others, likewise could come in only under such an exception. The Connecticut Court thus recognized the chemists as extra-judicial declarants, a factual determination in which this court concurs.[2]

The second point of disagreement identified by the Court of Appeals concerns the reliability and trustworthiness of the extra-judicial declarations of the chemists. It is difficult to extract from the state court's opinion the grounds for its finding that the statements of the chemist in *Reardon* bore "strong indicia of reliability." It appears, however, that the state court determined that the chemist was an "expert," 172 Conn. at 597, 376 A.2d 65, that the tests were "routine," *id.* at 598, 376 A.2d 65, and that Dr. Reading personally supervised the tests. *Id.*

The record is absolutely devoid of any evidence as to the qualifications of the chemists who actually performed the tests in either petitioner's case. Moreover, although similar tests were frequently performed in the state toxicological laboratory, Dr. Reading's detailed testimony concerning the testing procedures makes it clear beyond cavil that the tests themselves

---

**2.** In a later case, the Connecticut Court clarified the reasoning employed in *Reardon.* In *State v. Cosgrove,* 181 Conn. 562, 584, 436 A.2d 33 (1980), Dr. Reading's testimony was held admissible over the objection that it violated the hearsay rule. (No claim was made under the Confrontation Clause regarding Dr. Reading's testimony.) Admission of the testimony was held to be "consistent with the accepted principle that an expert's testimony may be based on reports of others if the reports are those customarily relied on by such an expert in formulating an opinion." *Cosgrove* thus resolves any doubt that the Connecticut Court recognizes the chemists as extra-judicial declarants, and recognizes that admission of Dr. Reading's testimony involves an exception to the general rule against hearsay.

I note that the "accepted principle" to which the Connecticut Court referred is a principle of relatively recent vintage. It has long been the law in Connecticut that an expert's opinion is inadmissible if it is based on hearsay evidence. *E.g., Brown v. Blauvelt,* 152 Conn. 272, 274, 205 A.2d 773 (1964). The cases on which the court relied in *Cosgrove* to establish its "accepted principle" are cases which carve out a limited exception to the general rule against allowing an expert opinion based on hearsay for situations where a physician's opinion regarding a person's mental or physical condition is based in part upon the observations of others. *State v. Cuvelier,* 175 Conn. 100, 394 A.2d 185 (1978); *Brown v. United States,* 375 F.2d 310 (D.C.Cir. 1966). Dr. Reading's testimony might not even have been admissible under Fed.R.Ev. 703, given the constitutional problems raised in a criminal trial by the use of hearsay to prove a crucial element of the government's case. *See generally McCormick on Evidence* (3d ed.) § 15 (1984).

This court is, of course, required to defer to the Connecticut Court's opinion on matters of state law, such as the admissibility of testimony under the state's law of evidence. But it is equally obvious that the decision whether the testimony was admissible does not answer the constitutional question raised by petitioners.

were anything but "routine." They were complicated tests requiring a high degree of skill and the use of sophisticated equipment, and the interpretation of the tests' results required specialized knowledge and experience. *Cf. United States v. McClintock*, 748 F.2d 1278, 1292 (9th Cir.1984). Finally, Dr. Reading's testimony also establishes rather conclusively that he did not "supervise" the testing in any meaningful sense. He was present in the laboratory, but was attending to other work. He did not observe the tests being made, and could not verify from his own personal knowledge that the substances tested by the chemists were actually the substances seized from petitioners, which Dr. Reading had removed from the laboratory safe and given to the chemists. Indeed, it strains credulity to assert that Dr. Reading could personally "supervise" some 50 of these tests daily.

The Connecticut Court also appears to have assumed, without explicitly finding, that Dr. Reading and the chemists were neutral, and therefore trustworthy, witnesses. *Reardon*, 172 Conn. at 595–98, 376 A.2d 65. *See also State v. Cosgrove*, 181 Conn. 562, 576–77, 436 A.2d 33 (1980) (criticizing this court's characterization of the chemists as important participants in the prosecutorial effort). The record shows that one of the state toxicological laboratory's primary functions is to assist the state in prosecuting persons accused of crimes involving illegal drugs. *See* Conn. Gen.Stat. § 19–483. The fact that the chemist "owes no allegiance per se to the state's attorney," *Cosgrove*, 181 Conn. at 577, 436 A.2d 33, cannot obscure the close relationship between the toxicological laboratory and prosecuting arm of the state government. Under such circumstances, the neutrality of Dr. Reading and his chemists cannot be presumed. In recognition of these circumstances, the Court of Appeals for this Circuit held in *United States v. Oates*, 560 F.2d 45, 68 (2d Cir.1977), that chemists are "important participants in the prosecutorial effort." Nothing in the record on these cases suggests otherwise.

Viewing the record as a whole, the court finds no support for the state court's conclusion that the chemists' extra-judicial declarations bore indicia of reliability and trustworthiness. In the absence of such record support, 28 U.S.C. § 2254(d) does not require deference to the state court's factual determination.

Also unsupported by the record was the state court's conclusion that Dr. Reading's opinion was founded on "firsthand personal knowledge." 172 Conn. at 598, 376 A.2d 65. Although Dr. Reading did testify that he had personally observed the results of the thin layer chromatography and chemical tests, he specifically stated at both trials that he based his opinion on all the tests, including the microscopic examinations performed only by the chemists. Moreover, as this court pointed out in its ruling granting the petitions, even in making his own observations, Dr. Reading necessarily relied on the declarations of the chemists that the substances tested were the substances seized from petitioners, that the plates were properly prepared with samples of the substances and of known standards, and that the tests procedures were properly carried out. At Hawkins' trial, Dr. Reading acknowledged that he had no independent recollection of the analyses in question.

As the Court of Appeals noted, the Connecticut Supreme Court also found in *Reardon* that there was reasonable necessity for Dr. Reading's reliance on the findings of the chemist. The *Reardon* opinion does not explain the ground for this finding except to state that the "laboratory procedures [were] adopted and undertaken pursuant to [Dr. Reading's] supervision and direction." 172 Conn. at 598, 376 A.2d 65. There is no evidence in the record that Dr. Reading established the procedures followed in the laboratory; and, as previously noted, Dr. Reading was unable to testify as to whether the usual procedures were actually followed in these cases.

The real issue, of course, is not whether there was a reasonable necessity for Dr. Reading's reliance on the chemists, but

whether there was reasonable necessity for the state's reliance on Dr. Reading's hearsay testimony in lieu of producing the chemists to testify at trial. As *Ohio v. Roberts* makes clear, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), it was incumbent upon the state to make a showing that the hearsay declarants were unavailable. The state made no such showing at either trial, nor, so far as the court can determine, at any stage of the appeals. The state never suggested any reason at all for its choice of Dr. Reading, rather than the chemists who performed the tests, to testify.[3] In *State v. Cosgrove*, 181 Conn. 562, 583, 436 A.2d 33 (1980), written expressly in response to this court's decision, the Connecticut Supreme Court suggests that production of the chemist would place considerable administrative burdens on the state.[4] Such burdens do not justify the deprivation of a right guaranteed by the Constitution. *Cf. Mayer v. City of Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971) (financial and administrative burdens on state do not justify refusal to provide an indigent with a free transcript on appeal). Although the court in *Cosgrove* characterized its reasoning as the type of interest-balancing employed by the Supreme Court of the United States in cases involving hearsay testimony and the Confrontation Clause, that Court has made clear that the state interests it considers significant in that context are the interests "in effective law enforcement, and in the development and formulation of the rules of evidence applicable in criminal proceedings." *Ohio v. Roberts*, 448 U.S. at 64, 100 S.Ct. at 2538. Such interests are not implicated in the state's decision not to produce the chemists to testify in these cases. The court therefore finds that the record did not support the existence of a "reasonable necessity" for the state's reliance on Dr. Reading's narration of hearsay, in lieu of producing the hearsay declarant.

As the foregoing discussion makes clear, deference to the state court's factfinding in these cases is not required because that court's factual determinations were not fairly supported by the record. 28 U.S.C. § 2254(d)(8). I next consider whether admission of Dr. Reading's testimony violated petitioners' rights under the Confrontation Clause.

*The Confrontation Clause*

The discussion in the prior ruling of petitioners' claim that admission of Dr. Reading's testimony, whether or not permissible under Connecticut's law of evidence, violated their right to confront and examine the witnesses against them, need not be repeated here. There the court determined first that Dr. Reading's testimony was crucial to the state's case against each petitioner, since it was the only evidence presented as to the nature of the allegedly illegal substances.[5] Second, the court found that the state had made no effort to

---

3. This court suggested in the prior ruling that the state prefers Dr. Reading's testimony to the chemists' as a matter of trial tactics. The suggestion is a matter of speculation on the part of the court, albeit speculation rooted in an understanding of trial strategy gained over many years. In any event, even if I am wrong in my assessment, the record reveals no showing by the state of any reason for its failure to call the chemists to testify.

4. It is not immediately apparent why production of a chemist, one of more than 20 who work in the toxicological laboratory, would present *more* of a burden to the state than production of Dr. Reading, one of three supervising toxicologists.

5. As the court stated in its prior ruling, the testimony of Dr. Reading was the only evidence offered by the state to prove the illegal nature of the substances. 491 F.Supp. at 986. Although the state now argues in its memorandum that there was other evidence from which the juries could have concluded that the substances were marijuana and cocaine, respectively, the state stipulated at the initial hearing on these petitions that Dr. Reading's testimony was the only evidence. In this respect, these cases are quite different from *Cosgrove*, in which there was other evidence that the substance at issue was marijuana. 181 Conn. at 585–87, 436 A.2d 33. The absence, in petitioners' trials, of such additional evidence also distinguishes these cases from *United States v. Clark*, 613 F.2d 391, 405–06 (2d Cir.1979), in which it was held that the nature of the substance need not be proven by direct evidence.

demonstrate the unavailability of the hearsay declarants, the chemists who actually tested the substances. Finally, the court determined, based on consideration of the record, that the state had not demonstrated indicia of reliability which would justify admitting Dr. Reading's testimony despite the fact that the chemists were not presented. In the present opinion, I have made it clear that the Connecticut Supreme Court's contrary finding, that adequate indicia of reliability were present, was not fairly supported by the record.

Little need be added to the discussion contained in the prior ruling. The court notes, however, that the Supreme Court's decision in *Ohio v. Roberts* is entirely consistent with this court's treatment of the Confrontation Clause issue. The Supreme Court's discussion is worthy of quotation in full:

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. See *Mancusi v. Stubbs*, 408 U.S. 204 [92 S.Ct. 2308, 33 L.Ed.2d 293] (1972); *Barber v. Page*, 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255] (1968). See also *Motes v. United States*, 178 U.S. 458 [20 S.Ct. 993, 44 L.Ed.2d 1150] (1900); *California v. Green*, 399 U.S. [149] at 161–62, 165, 167, n. 16 [90 S.Ct. 1930 at 1936–37, 1938, 1939, n. 16, 26 L.Ed.2d 489 (1970) ].[7]
>
> The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." *Snyder v.*

*Massachusetts*, 291 U.S. [97] at 107 [54 S.Ct. 330 at 333, 78 L.Ed. 674 (1934) ]. The principle recently was formulated in *Mancusi v. Stubbs:*

> "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra* [400 U.S. 74], at 89 [91 S.Ct. 210 at 220, 27 L.Ed.2d 213 (1970) ], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra* [399 U.S.], at 161 [90 S.Ct. at 1936]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.' " 408 U.S., at 213 [92 S.Ct. at 2313].

> The Court has applied this "indicia of reliability" requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection." *Mattox v. United States*, 156 U.S. [237], at 244 [15 S.Ct. 337, at 340, 39 L.Ed. 409 (1895) ].[8] This reflects the truism that "hearsay rules and the Confrontation Clause are generally designed to protect similar values," *California v. Green*, 399 U.S., at 155 [90 S.Ct., at 1933], and "stem from the same roots," *Dutton v. Evans*, 400 U.S. 74, 86 [91 S.Ct. 210, 218, 27 L.Ed.2d 213] (1970). It also responds to the need for certainty in the workaday world of conducting criminal trials.

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence

falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

[7] A demonstration of unavailability, however, is not always required. In *Dutton v. Evans*, 400 U.S. 74 [91 S.Ct. 210, 27 L.Ed.2d 213] (1970), for example, the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness. Cf. Read, The New Confrontation—Hearsay Dilemma, 45 S.Cal.L.Rev. 1, 43, 49 (1972); The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 194–195, 197–198 (1971).

[8] See, *e.g., Pointer v. Texas*, 380 U.S. [400], at 407 [85 S.Ct. 1065, at 1069, 13 L.Ed.2d 923 (1965)] (dying declarations); *Mattox v. United States*, 156 U.S., at 243–244 [15 S.Ct., at 340] (same); *Mancusi v. Stubbs*, 408 U.S. 204, 213–16 [92 S.Ct. 2308, 2313–14, 33 L.Ed.2d 293] (1972) (cross-examined prior-trial testimony); Comment, 30 La.L.Rev. 651, 668 (1970) ("Properly administered the business and public records exceptions would seem to be among the safest of the hearsay exceptions").

448 U.S. at 65–66, 100 S.Ct. at 2538–39 (note 9 omitted).

Under the standards enunciated in *Roberts*, it was incumbent on the state to make a showing at petitioners' trials that the hearsay declarants were not available to testify. The state made no such showing. Nor, in the judgment of this court after a careful review of the record, did the state demonstrate that the out-of-court statements bore indicia of reliability adequate to justify their admission. This is not a case where the nature of the hearsay exception upon which the state relied is

such that reliability can be inferred.[6] For the reasons discussed in this court's prior ruling and in this decision, the court concludes that petitioners' constitutional right to confront and cross-examine the witnesses against them was violated at their state court trials.

## Conclusion

Because the Connecticut Supreme Court's findings of fact relating to the reliability of the hearsay testimony admitted at petitioners' trials were not adequately supported by the record, this court need not defer to those findings. 28 U.S.C. § 2254(d)(8). Having reviewed the record, this court finds that the extra-judicial statements did not bear such adequate indicia of reliability that they could be admitted without giving petitioners an opportunity to confront and cross-examine the declarants. The conclusion that petitioners' rights under the sixth amendment were violated is inescapable.

It is therefore ORDERED that a writ of habeas corpus issue out of this court discharging the petitioners from custody, unless petitioners are afforded a new trial within 60 days.

SO ORDERED.

---

**6.** The exception under which Dr. Reading's testimony was admitted, allowing an expert to base his opinion on statements by others, hardly qualifies as "firmly rooted." *See* note 2, *supra*. *See also Ohio v. Roberts*, 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8 (dying declarations, cross-examined prior trial testimony, and the business and public records exceptions considered to carry their own "indicia of reliability"). In this regard an additional distinction between petitioners' cases and *State v. Cosgrove* should be pointed out. In *Cosgrove*, the Connecticut Supreme Court held that admission of the *toxicological laboratory report* was permitted under the business records exception to the hearsay rule, and did not violate the Confrontation Clause. Admission of the report is not in issue in these cases.

It is highly questionable whether the business records exception is a proper basis for admis-

sion of the toxicological report. The state's operation of a laboratory for the purpose of assisting in the prosecution of accused criminals is hardly a business in the traditional sense. Moreover, the close relationship between the prosecutor and the laboratory undermines the assumption of unusual reliability and trustworthiness on which the exception is predicated. *See United States v. Oates*, 560 F.2d 45 (2d Cir.1977).

It should also be noted that in Conn.Gen.Stat. § 19–483(b), the state legislature has provided that the toxicological report shall be received as competent evidence *unless the defendant objects,* in which case the "usual rules of evidence shall obtain." The language suggests that the legislature recognized the hearsay problem presented by admission of the report without testimony by the persons who performed the analysis.