**James REARDON, Petitioner-Appellee,**

v.

**John R. MANSON,
Respondent-Appellant.**

**Perry HAWKINS, Petitioner-Appellee,**

v.

**Richard STEINERT,
Respondent-Appellant.**

**No. 1014, Docket 85–2312.**

United States Court of Appeals,
Second Circuit.

Argued June 9, 1986.
Decided Nov. 20, 1986.

John M. Massameno, Asst. State's Atty., Sr. Appellate Atty., Office of the Chief State's Atty., Wallingford, Conn., for respondents-appellants.

David S. Golub, Stamford, Conn. (Silver, Golub and Sandak, Stamford, Conn., of counsel), for petitioners-appellees.

Before FEINBERG, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and HOLDEN, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

The State of Connecticut appeals from a judgment of the United States District Court for the District of Connecticut (Blumenfeld, J.) granting the petitions of James Reardon and Perry Hawkins for writs of habeas corpus, and setting aside their State court convictions. The district court held that the admission of certain drug-identification testimony by a State toxicologist deprived petitioners of the right of confrontation guaranteed them by the Sixth Amendment. This is the State's second appeal from an adverse decision by the district court. On the appeal from Judge Blumenfeld's first decision, 491 F.Supp. 982, we remanded with instructions to reconsider in the light of 28 U.S.C. § 2254(d) as interpreted by the Supreme Court in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). *See* 644 F.2d 122. Upon reconsideration, the district court reaffirmed its prior decision. 617 F.Supp. 932. For the reasons that follow, we now reverse.

In separate and unrelated Connecticut trials, Reardon and Hawkins were convict-

* Of the United States District Court for the District of Vermont, sitting by designation.

ed respectively of violating Connecticut laws prohibiting the possession of marijuana and the sale of cocaine. Their convictions were affirmed by the Connecticut Supreme Court. *See State v. Reardon,* 172 Conn. 593, 376 A.2d 65 (1977); *State v. Hawkins,* 173 Conn. 431, 378 A.2d 534 (1977). At both trials, the State established the illegal nature of the substances seized from petitioners through the testimony of Dr. Charles Reading, one of three toxicologists employed in the toxicology laboratory of the Connecticut Department of Health. The three toxicologists supervised the testing procedures and analyses performed by approximately two dozen chemists in the laboratory. Dr. Reading testified at each trial that he personally handed the suspected narcotic substance to one of the chemists under his supervision, with instructions to subject the substance to certain testing procedures that were routinely employed in the laboratory. The results of those tests were brought promptly to Dr. Reading, who examined them and drew his own conclusions as to the chemical nature of the substances in question.

Only one of the testing procedures required a subjective evaluation by the testing chemist. In this test, the chemist examined the suspected substance under a microscope to determine whether it contained the cystolithic hairs that are characteristic of marijuana. The remaining tests were mechanically objective in nature. The thin layer chromatography and chemical analysis procedures that were used in both cases produced distinctive colors and patterns on treated celluloid slides, which were brought immediately to Dr. Reading and examined by him. The ultraviolet ray spectrophotometry, which also was used to test the suspected cocaine seized from Hawkins, produced an energy absorption pattern which was measured by electronic instruments and mechanically recorded by the chemist.

Citing *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the district court held that Dr. Reading should not have been permitted to testify as to what he was told by his chemists, unless the State first showed that the chemists themselves were unavailable to testify. 617 F.Supp. at 937, 939. We disagree. The unavailability rule announced in *Roberts* was developed in a series of cases in which the prosecution offered written records of prior testimony in place of live testimony at trial, and the rule should not be extended mechanically to other factual contexts. *United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 1125–26, 89 L.Ed.2d 390 (1986). The confrontation clause is not necessarily violated by the prosecution's failure to produce a hearsay declarant for cross-examination at trial where the "utility of trial confrontation" would be "remote" and of little value to either the jury or the defendant. *Ohio v. Roberts, supra,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7; *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *United States v. Davis,* 767 F.2d 1025, 1032 (2d Cir.1985); *United States v. Yakobov,* 712 F.2d 20, 24 n. 4 (2d Cir.1983).

In view of the fact that Dr. Reading's laboratory performs some 20,000 tests each year, it is most unlikely that the chemists who assisted Dr. Reading would have any independent recollection of the tests they performed. Their testimony inevitably would have been based on their laboratory notes, which Dr. Reading was well qualified to interpret. Any testimony from the chemists bearing on the likelihood of error in the tests necessarily would have involved broad statements as to general practices and probabilities within the laboratory, matters concerning which Dr. Reading himself was well qualified to testify. Dr. Reading answered all questions put to him about the general accuracy and reliability of the equipment and testing procedures used in his laboratory.

We conclude that there would have been little potential utility in requiring the State to produce the assisting chemists for cross-examination as to whether they were telling the truth when they informed Dr. Reading that they had tested the substances he gave them and that the results

they brought for his inspection were obtained in accordance with his instructions and standard laboratory procedures. In the remote event that one of Dr. Reading's assistants did recall testing the narcotics at issue herein, it would be unrealistic to expect her to admit on cross-examination that she was either mistaken or lying when she told Dr. Reading, in effect, "I ran the tests you requested on the substance you gave me minutes ago, and here are the results." We agree with the Eighth Circuit Court of Appeals that the production of the chemist who performed the test "rarely leads to any admissions helpful to the party challenging the evidence." *United States v. Bell*, 785 F.2d 640, 643 (8th Cir.1986). *Cf. United States v. Keplinger*, 776 F.2d 678, 697 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986).

Citing *United States v. Oates*, 560 F.2d 45, 82–83 (2d Cir.1977), petitioners contend nevertheless that the assisting chemists should have been produced so that petitioners could explore their personal qualifications and experience. Petitioners' reliance on *Oates* is misplaced. In the first place, *Oates* was not decided on constitutional grounds but on an interpretation of the Federal Rules of Evidence which are not at issue herein. *See* 560 F.2d at 48–49. In the second place, *Oates* did not, as here, concern the admission of an expert's opinion, but dealt instead with a chemist's report and worksheet which the prosecution attempted to authenticate through a witness who had no connection with either the documents or the person who prepared them.

▊ It is rare indeed that an expert can give an opinion without relying to some extent upon information furnished him by others. *See United States v. Smith*, 519 F.2d 516, 521 (9th Cir.1975); *Jenkins v. United States*, 307 F.2d 637, 641–42 (D.C. Cir.1962) (en banc). Moreover, "[i]t is quite reasonable for a chemist to review another chemist's analysis when forming an opinion as to the veracity of the latter's test results." *United States v. Posey*, 647 F.2d 1048, 1051 (10th Cir.1981). Expert reliance

upon the output of others does not necessarily violate the confrontation clause where the expert is available for questioning concerning the nature and reasonableness of his reliance. *United States v. Genser*, 582 F.2d 292, 299 (3d Cir.1978); *United States v. Williams*, 447 F.2d 1285, 1289–90 (5th Cir.1971) (en banc), *cert. denied*, 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972). This is particularly true where the defendants have access to the same sources of information through subpoena or otherwise. *See United States v. Szabo*, 789 F.2d 1484, 1490 n. 9 (10th Cir.1986); *United States v. Davis, supra*, 767 F.2d at 1032; *United States v. Lawson*, 653 F.2d 299, 302–03 (7th Cir.1981), *cert. denied*, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982); *Kay v. United States*, 255 F.2d 476, 480–81 (4th Cir.), *cert. denied*, 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958).

Petitioners do not dispute the State's contention that they had the right under Connecticut law to subpoena the chemists as their own witnesses. *State v. Cosgrove*, 181 Conn. 562, 578–82, 436 A.2d 33 (1980); Conn.Gen.Stat. § 54–2a. It is true, as the district court noted, 491 F.Supp. at 987–88, that this Court once expressed doubts whether a prosecutor's failure to produce an available witness could be remedied by the defendant's ability to call the absent declarant as his own witness. *United States v. Oates, supra*, 560 F.2d at 82 n. 39 (dictum); *see also United States v. Check*, 582 F.2d 668, 683 (2d Cir.1978) (hearsay analysis). Since that time, however, it has become settled that, at least in those borderline cases where the likely utility of producing the witness is remote, the Sixth Amendment's guarantee of an opportunity for effective cross-examination is satisfied where the defendant himself had the opportunity to call the declarant as a witness. *United States v. Inadi, supra*, 106 S.Ct. at 1127–29; *Tennessee v. Street*, 471 U.S. 409, 416, 105 S.Ct. 2078, 2082, 85 L.Ed.2d 425 (1985); *Lee v. Illinois*, —— U.S. ——, 106 S.Ct. 2056, 2067 n. 3, 90 L.Ed.2d 514 (1986) (Blackmun, J., joined by three other Justices, dissenting on other grounds). That reasoning is particularly compelling where,

as here, petitioners in all likelihood chose not to call the declarants as witnesses because they recognized that the declarants' testimony almost certainly would have been adverse to their own interest. *See United States v. Inadi, supra,* 106 S.Ct. at 1127 & n. 7; *Dutton v. Evans, supra,* 400 U.S. at 88 n. 19, 91 S.Ct. at 219 n. 19 (plurality opinion). We think it entirely plain that petitioners chose not to subpoena the chemists who assisted Dr. Reading because they perceived, as we do, that the possibility of benefit from such testimony was remote and the more likely result would have been the corroboration of Dr. Reading's testimony. Under those circumstances, it would be a manifest miscarriage of justice to overturn a conviction on the ground that the State declined to call a witness whose testimony was available to both parties.

■ Of course, when the prosecution seeks to introduce a hearsay statement without producing the declarant, the confrontation clause requires a showing that the statement bears adequate indicia of reliability and trustworthiness. *Ohio v. Roberts, supra,* 448 U.S. at 65–66, 100 S.Ct. at 2538–2539; *United States v. Davis, supra,* 767 F.2d at 1032. Since this is the most crucial issue on which we differ with the district court, we can dispose quickly of the district court's remaining grounds for the grant of habeas corpus relief. The district court's comment that it cannot be presumed that Dr. Reading was a neutral and trustworthy witness, 617 F.Supp. at 936, completely overlooks his qualifications and the verdicts of the jury, which obviously found Dr. Reading's testimony to be credible. The district court's statement that one of the primary functions of Dr. Reading and his co-workers was to assist the State in prosecuting persons accused of crimes involving illegal drugs is a distortion of their statutorily assigned duties. The Connecticut statute in question simply makes the facilities of the laboratory and its personnel "available to the coroners, the medical examiners and all duly constituted prosecuting police and investigating agencies of the state." Conn.Gen.Stat. § 19–8,

now in substance § 19a–28. As the Connecticut Supreme Court found, section 19–483 of the General Statutes, now in substance section 21a–283, mandates that the toxicology laboratory be manned by "qualified professional toxicologists and chemists." 172 Conn. at 595, 376 A.2d 65. No one has questioned Dr. Reading's qualifications. We reject the innuendo in the district court's opinion that qualified professional toxicologists such as Dr. Reading would falsify test results "to assist the state in prosecuting persons." Obviously, the jury likewise reasoned differently than did the district court.

■ Turning now to the issue of reliability, we are completely satisfied that sufficient indicia of reliability were present here. When the chemists in the toxicology laboratory brought their test results to Dr. Reading and informed him that the plates and mechanical readings were the product of standard testing procedures on the substances he had given them, they were relating matters of present fact, of which they had immediate personal knowledge. There was no realistic possibility that their statements were based upon faulty recollection, and they had no motive whatsoever to jeopardize their careers by falsifying such information. Moreover, they were well aware that Dr. Reading himself was participating in tests, the results of which would measure the accuracy of their own. Under such circumstances, there were adequate indicia of reliability to satisfy the demands of the confrontation clause. *United States v. Ward,* 793 F.2d 551, 556 (3d Cir.1986); *United States v. Szabo, supra,* 789 F.2d at 1490 & n. 9; *United States v. Metzger,* 778 F.2d 1195, 1202–03 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986); *United States v. Huber,* 772 F.2d 585, 590 (9th Cir.1985). *See also Ohio v. Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539, and Fed.R.Evid. 703.

The judgment of the district court is reversed, and we remand to the district

court with instructions to dismiss petitioners' applications for writs of habeas corpus.