STATE OF CONNECTICUT *v.* MATTHEW MCNALLY

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, JS.

Argued April 5—decision released June 21, 1977

*E. Eugene Spear,* assistant public defender, with whom, on the brief, was *Herbert J. Bundock,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Walter D. Flanagan,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. On a trial to a jury, the defendant was found guilty on a two-count information charging him with selling marihuana in violation of 1973 Public Acts, No. 73-681, § 26 (a) (General Statutes § 19-480 [a]). He was sentenced to concurrent terms of not less than five nor more than seven years on each of the two counts. He took the present appeal from the judgment, pressing as claims of error that the state failed to sustain the burden of proof on the issue of entrapment, that the court failed properly to charge the jury on that issue, and that it erred in denying the defendant's motion to set aside the verdict as contrary to the evidence and the law.

The trial arose out of incidents that occurred on September 19, 1973, and September 24, 1973. There was evidence from which the jury could have found the following facts: Clinton Stites worked as an undercover agent for the southwest regional crime squad. In August, 1973, he was assigned to investigate narcotics violations in the Stratford area in which was located Skipper's Restaurant. He utilized the pseudonym "Clifford Spencer" and, dressing in dungaree-style clothes, frequented Skipper's Restaurant, having a few drinks, shooting pool and making friends with the clientele. He became acquainted with the defendant, whom he knew as "Matty," and in August loaned him five dollars. On the evening of September 19, 1973, he was in the restaurant standing around a pool table with the defendant, exchanging pleasantries. The defendant then asked him if he were looking to buy marihuana and when Stites answered affirmatively the defendant said that he could sell him some at $20 an ounce. Stites agreed to the price and said that he would like to buy four ounces. The defend-

ant said he would have to go to his supplier and Stites suggested using his car. They did and the defendant directed Stites where to drive. En route, the defendant expressed a hesitancy about selling marihuana to Stites because he might be a policeman, but after he was assured that Stites was not a policeman and after he was shown a motor vehicle license, a newspaper clipping, an address book and some cards which Stites produced to identify himself as Clifford Spencer, they proceeded to Eaton Street where the defendant left the car, having already been paid, and returned with the marihuana. On the return trip to Skipper's, the defendant told Stites to keep in touch if he wanted more marihuana.

Subsequently, Stites returned to Skipper's every day until September 24 when he arrived about 7 p.m. accompanied by a cover agent named Richard O'Connell. He and O'Connell met the defendant about 8:15 p.m. in the area of the pool table. The defendant asked Stites if he liked the marihuana he had purchased and if he would like to purchase some more at the same price. Stites indicated he would like to buy three more bags and they again left the restaurant in Stites' car. O'Connell covered Stites in his car. En route, Stites paid the defendant $60 and they went again to Eaton Street where the defendant left the car and returned with the marihuana, which he turned over to Stites. They discussed the quality of the marihuana, and the defendant told Stites that he would get him all he wanted and that as the weight increased into pounds the price would drop and he could get up to 100 pounds. As the defendant got out of the car, the

defendant told Stites to get in touch with him when he wanted more. In each instance, the contents of the bags purchased were duly tested by a toxicologist and proved to be marihuana.

The defendant admitted that he had sold the marihuana to Stites on both occasions but claimed that he had done so at Stites' request after being assured that Stites was not a policeman, and that he would not have made the sales if he had known that Stites was a policeman. A witness for the defendant testified that on September 19 she was shooting pool with Stites at Skipper's and overheard him ask the defendant "where he could buy any drugs, any marihuana." Another defense witness testified that on September 24 he was shooting pool at Skipper's and Stites approached the defendant and asked him if he had any marihuana for sale.

In these circumstances, the defendant, having admitted the sales, relied upon a defense of entrapment and claimed "that Stites had induced the sales and therefore 'entrapped' him." Entrapment, where it exists, is a proper defense and expressly recognized as such by statute. Section 53a-15 of the General Statutes defines the defense: "In any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was induced to do so by a public servant, or by a person acting in cooperation with a public servant, for the purpose of institution of criminal prosecution against the defendant, and that the defendant did not contemplate and would not otherwise have engaged in such conduct."

We have had recent occasion to discuss at length the doctrine of entrapment. See *State* v. *Fine*, 159 Conn. 296, 268 A.2d 649; *State* v. *Marquardt*, 139

Conn. 1, 5, 89 A.2d 219. In the *Fine* case, in which the circumstances were similar to those in the present case, involving the sale of marihuana to an undercover police officer, we repeated (p. 299) the general principles as we had stated them in the *Marquardt* case: " '[I]f the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity is furnished or the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it constitutes no defense. On the other hand, if the evil intent and the criminal design originate in the mind of the government agent and the accused is lured into the commission of the offense charged in order to prosecute him for it, when he would not have committed an offense of that general character except for the urging of the agent, no conviction may be had.' " To this quotation and the authorities cited, we further cited *Sherman* v. *United States,* 356 U.S. 369, 372, 78 S. Ct. 819, 2 L. Ed. 2d 848; *Sorrells* v. *United States,* 287 U.S. 435, 454, 53 S. Ct. 210, 77 L. Ed. 413; *State* v. *Avery,* 152 Conn. 582, 583, 211 A.2d 165; DeFeo, "Entrapment as a Defense to Criminal Responsibility: Its History, Theory and Application," 1 U. San Fran. L. Rev. 243; note, 33 A.L.R.2d 883.

The principles enunciated in the *Fine* case are in accord with those affirmed by the United States Supreme Court in *Hampton* v. *United States,* 425 U.S. 484, 96 S. Ct. 1646, 48 L. Ed. 2d 113, and *United States* v. *Russell,* 411 U.S. 423, 432, 93 S. Ct. 1637, 36 L. Ed. 2d 366. In the *Russell* case, Mr. Justice Rehnquist writing for the majority stated (pp. 435–36): *"Sorrells* and *Sherman* both recognize 'that

the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. . . .' Nor will the mere fact of deceit defeat a prosecution, see, e.g., *Lewis* v. *United States,* 385 U.S. 206, 208–209 [87 S. Ct. 424, 17 L. Ed. 2d 312] (1966), for there are circumstances when the use of deceit is the only practicable law enforcement technique available. It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play."

It may well be doubted that in the circumstances of this case the defendant was even entitled to a charge on the issue of entrapment. The court, however, gave the defendant the benefit of any doubt and fully charged the jury on the issue. Having instructed the jury on the state's burden of proof beyond a reasonable doubt as to the elements of the offenses charged, the court charged further: "The burden becomes the same with the issue of entrapment. The state must satisfy you, beyond a reasonable doubt, that the defendant is guilty of both of these crimes or either one of these crimes if you are to return a verdict of guilty. And it is to overcome any question which may arise in your mind with respect to entrapment beyond a reasonable doubt, if you are to find the defendant guilty of either or both of these charges." In charging on the law of entrapment, the court instructed the jury in the precise language of § 53a-15 of the General Statutes and explained at length the basic principles of the doctrine. It included instruction as to the distinction between a trap for the unwary innocent and a trap for an unwary criminal and expressly charged in the exact language of *State* v. *Fine,*

supra, and *State* v. *Marquardt,* supra, which we have already quoted with respect to the origination of the criminal intent in the mind of the accused. It properly focused on the question of the intent or predisposition of the defendant to commit the crimes charged and left the question of entrapment to be decided by the jury as a question of fact. We find no error in the charge on entrapment and there is no merit whatsoever to the defendant's briefed claim that that portion of the charge was "too vague and misleading."

The defendant's claim that the court erred in denying his motion to set aside the verdict as contrary to the evidence and the law requires no further discussion. The evidence which we have hereinbefore noted amply supports the verdict which was predicated upon the jury's determination of a basic question of fact pursuant to the court's proper charge as to the applicable law.

There is no error.

In this opinion the other judges concurred.