### STATE OF CONNECTICUT *v.* GAETANO MARINO
### (7591)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 14—decision released August 13, 1990

*Anthony C. Polvino,* with whom was *Edward J. Peters,* for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, was *John T. Redway,* state's attorney, and *Timothy J. Liston,* assistant state's attorney, for the appellee (state).

PER CURIAM. The defendant appeals from the judgment of conviction, after a jury trial, of the sale of cocaine by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The defendant claims that the trial court improperly (1) denied his pretrial motion for a continuance, (2) instructed the jury on the issue of entrapment, (3) sustained a state witness's claim of attorney-client privilege, and (4) permitted the state's attorney to cross-examine a defense witness about his prior guilty plea.

The following facts are relevant to the disposition of the defendant's appeal. In July, 1987, Laurel Morey was driven to the defendant's house at 10 Riverside Drive, Portland, by her cousin, Robin Solis. The two women entered the defendant's house and proceeded to the living room where they met the defendant. After some limited conversation, the defendant produced a plate with cocaine on it, and cut the cocaine into three lines with a razor. The defendant passed the plate and a metal tube around the room, and Morey, Solis and the defendant each inhaled the cocaine on the plate. At some time within the next hour, the defendant again cut three lines of cocaine and the three again inhaled the narcotic substance.

On August 12, 1987, a Guilford police detective, acting as an undercover agent for the statewide narcotics task force, met with Rosario Aresco and bought one-eighth ounce of cocaine from him. After the sale, Aresco asked the detective to drive him to 10 Riverside Drive, and she complied. They stopped in front of the house for a few seconds and then, at Aresco's direction, they drove to a restaurant about one block away. Aresco went into the restaurant and made a telephone

call. He returned to the detective's car and asked her to bring him back to the Riverside Drive house. The pair returned to, and entered, the house. Once inside, Aresco introduced the detective to the defendant. After a short time, the defendant placed some cocaine in a bowl and passed the bowl to Aresco. Aresco asked the detective to put the one-eighth ounce she had just purchased from him into the bowl. The detective obliged. Aresco consumed some of the cocaine, but the detective declined and left the premises, explaining that she had to go to work.

On September 19, 1987, the detective and other members of the task force were directed to attempt to purchase more cocaine from Aresco. When the detective discovered that Aresco was not home, the defendant became the target of the task force's investigation. She went to 10 Riverside Drive at about 6:30 p.m. and explained that she could not find Aresco, but wanted to buy some cocaine. The defendant invited her in and produced four packets of cocaine that he sold to her for $200. He told her that he did not like taking Aresco's customers away from him, but that if she needed anything more she could return to his home.

On November 24, 1987, the defendant was arrested. When the defendant was told that he was under arrest, he asked: "For the stuff I sold this morning?"

I

On September 23, 1988, the defendant filed a motion for a continuance requesting that the trial be postponed until such time as the state made full disclosure of any and all information concerning his case that was gathered from wiretaps in an ongoing, broader, narcotics investigation.[1] The defendant now claims that the trial court improperly denied this pretrial motion.

---

[1] The charges filed in relation to the broader investigation were heard in State v. Cardella, Superior Court in the Judicial District of Middlesex, Docket No. CR 9-94965.

The defendant claims that the testimony that was given by a police officer at the hearing on his motion for continuance was false and its admission violated the principles set forth in *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and denied him due process. This claim relates to the defendant's assertion of a defense of entrapment.

The defendant's argument is based upon the premise that if the state's decision to attempt to buy drugs from him on September 19, 1987, arose out of the content of an interception by wiretap of a September 17, 1987 conversation he had with another person, that fact would have tended to establish his defense of entrapment. If that were the case, he argues, he was improperly denied the opportunity, because of the officer's incorrect testimony regarding the date of the translation of the conversation, of establishing that the buy from him on September 19 was prompted, not by his conduct in August and by his reputation with the police as a narcotics trafficker, as the state claimed, but by the overheard telephone conversation on September 17. If the conversation prompted the controlled buy, he claims that would be entrapment.

The officer in question testified that the police had a wiretap of a telephone conversation between the defendant and another, dated September 17, 1987, and that the conversation had been translated from Italian to English on September 28, 1987, when, in fact, this conversation had been translated on September 18, 1987.[2] The trial court denied the continuance sought

[2] The translation of the September 17, 1987 conversation made on September 18, 1987, is as follows:

"Call #112

"This call was between Tommy and Guy.

"T: Hey Guy, what's up?

"G: What do you want?

"T: I got a guy here who needs a pair.

"G: 16.

"T: What?

by the defendant because the translation had not occurred until after the September 19 buy from the defendant.

The correct date of the translation does not aid the defendant in his defense of entrapment. General Statutes § 53a-15 provides that "[i]n any prosecution for an offense, it shall be a defense that the defendant engaged in the proscribed conduct because he was induced to do so by a public servant . . . for the purpose of institution of criminal prosecution against the defendant, and that the defendant did not contemplate and would not otherwise have engaged in such conduct." See also *State* v. *Grant*, 8 Conn. App 158, 164, 511 A.2d 369 (1986). " ' "[I]f the criminal intent or the willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity is furnished or the accused is aided in the commission of the crime in order to secure the evidence necessary to prosecute him for it constitutes no defense. On the other hand, if the evil intent and criminal design originate in the mind of the government agent and the accused is lured into the commission of the offense charged in order to prosecute him for it, when he would not have committed an offense of that general character except for the urging of the agent, no conviction may be had." ' " *State* v. *McNally*, 173 Conn. 197, 201, 377 A.2d 286 (1977).

It is difficult to conclude that any misstatement of the date of the translation[3] resulted in a denial of the

"G: 16.
"T: What does Maria want?
"G: Unitell. . . . .
"T: A little bit over would be fine.
"G: Bye
"T: Good bye."

[3] The record before us does not compel the conclusion that the misstated date was an intentionally false statement. Another conversation of the

defendant's ability to mount a defense, or that there was any reasonable probability that the result of the trial would have been different had the correct date of the translation been known. See *State* v. *Pollitt,* 205 Conn. 132, 141, 531 A.2d 125 (1987).

The trial in this case began on October 13, 1988, at which time the defendant was aware of the translation, regardless of whether it was made on September 18, 1987, or on September 28, 1987. He, thus, could have specifically requested a copy of the translation. The state also offered to allow the defendant to listen to the tape. In addition, by the time of trial and as of the date of the hearing on the motion that occurred just prior to the trial, the defendant knew the date and substance of the intercepted conversation. Where, as here, the defendant had access to the conversation in question, or could have discovered its contents through reasonably diligent efforts, the state cannot be said to have suppressed that information. *State* v. *Simms,* 201 Conn. 395, 407, 518 A.2d 35 (1986).

In *Brady* v. *Maryland,* supra, 87, the United States Supreme Court stated that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is *favorable* to the accused and is *material either to guilt or to punishment.* Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable

defendant was intercepted on September 15, 1987. That conversation, which was later deemed not pertinent, was, in fact, translated on September 28, 1987. Hence, the officer's testimony may have resulted from an error in the log containing those conversations.

character for the defense, and (c) the materiality of the evidence." (Emphasis added.) *Moore* v. *Illinois,* 408 U.S. 786, 794–95, 92 S. Ct. 2562, 33 L. Ed. 2d 706, reh. denied, 409 U.S. 897, 93 S. Ct. 87, 34 L. Ed. 2d 155 (1972). The evidence in question is only material if it is reasonably probable that, had it been disclosed to the defendant, the outcome of the proceeding would have been different. *State* v. *Pollitt,* supra, 205 Conn., 142–43.

When we apply the relevant principles of law to the case at hand, we conclude that there was no *Brady* violation in the present case. " ' "[T]he materiality determination is not to be made in a vacuum; rather it must be made in the context of all the evidence introduced at trial." ' " *State* v. *Pollitt,* supra, 205 Conn. 143. The evidence in this case clearly indicates that the controlled buy resulted from the undercover agent's investigation, and the suspicion of the Middletown police, as stated in their affidavit for the arrest warrant of the defendant, that the defendant was a "heavy narcotics trafficker."

The translation of the September 17, 1987 conversation, made on September 18, 1987, rather than on September 28, 1987, forms the basis for the defendant's claim that the state did not make a full and fair disclosure of all of the information it possessed from the wiretaps concerning the defendant. The evidence, however, was not material to his defense of entrapment. The only translation available to the state and the defendant until after the conclusion of the trial was the incriminating translation of the September 17, 1987 conversation made by a Federal Bureau of Investigation agent on September 18, 1987, and represented by the testifying police officer to have been made on September 28, 1987.[4] That translation, in fact, tends to dis-

---

[4] Another translation of the same September 17, 1987 conversation was translated on June 12, 1989, and was obviously not in existence as of the

prove the defense of entrapment because it indicates the defendant's predisposition to commit the crime he was charged with and does not support his claim of inducement or enticement by the police.

We realize that the question of whether tardy disclosure of *Brady* material requires a continuance is usually a factual question to be determined by the trial court. *State* v. *Pollitt,* 199 Conn. 399, 414, 508 A.2d 1 (1986). "When the mind of a fair and reasonable person could reach only one conclusion, however, it becomes a question of law." *Hughes* v. *National Car Rental Systems, Inc.,* 22 Conn. App. 586, 590, 577 A.2d 1132 (1990).

In view of the circumstances of this case, we conclude that, even if we were to assume that the evidence

---

date of the hearing on the motion for a continuance or as of the date of the trial. It reads as follows:

"F: Hello.
"J: Hi. Guy home?
"F: Ya, who is speaking?
"J: John.
"F: Who's John?
"J: He's on the other side.
"G: Yo.
"J: Hey Guy.
"G: What up?
"J: What do you want?
"G: Can I come and visit you today?
"J: Are you going to be busy long?
"G: What?
"J: Busy long?
"G: In busy. What Maria want?
"J: Can I pass by now?
"G: Yeah you can come by.
"J: OK.
"G: Yeah, there is no problem.
"J: I'll see you.
"G: Bye."

There is substantial discrepancy between the translations that is not resolved in this record.

requested by the defendant was favorable, it falls short of the materiality standard set forth in *State* v. *Pollitt,* supra, 205 Conn. 141–43.

## II

The defendant also claims that the instructions of the court were tantamount to a direction of a verdict on the defense of entrapment.[5] The instructions correctly stated the law and were in accord with General Statutes § 53-15 and case law. *State* v. *McNally,* supra, 201–202. Under the circumstances of this case, it is doubtful that the defendant was entitled to any charge on entrapment. The court, however, "gave the defendant the benefit of any doubt and fully charged the jury on the issue." Id., 202.

## III

The defendant also claims that the trial court impermissibly allowed the state's witness, Laurel Morey, to claim the attorney-client privilege during the defendant's cross-examination of her.

---

[5] The court charged as follows: "The defense of entrapment is available only to a person who is not engaged in criminal activities and who would not have committed the crime if it had not been for the inducement of a police officer. If the criminal intent or willing disposition to commit the crime originates in the mind of the accused and the criminal offense is completed, the fact that the opportunity furnished for the accused is aided in the commission of the crime, and by this particular case, the police officer, constitutes no defense. On the other hand, if the evil intent in the criminal design originates in the mind of the police officer and the accused is lured into the commission of the crime charged in order to prosecute him for it, when he would not have committed an offense of that general character, except for the urging of the agent, no conviction may be had. . . . Now, inducement means more than a simple request to break the law. In the evidence, in this case, the colloquy which you have heard on the tape and other evidence that came in with respect to the tape, the colloquy between [the undercover detective] and the Defendant discloses nothing more than a simple request by the police officer, that the Defendant break the law. That alone, is not inducement, which would support the claim of entrapment."

The following facts are necessary for the resolution of this claim. The state called Morey as a rebuttal witness on the issue of entrapment to show that the defendant had a predisposition to engage in the prohibited conduct. On direct examination by the state, she testified that she had consumed cocaine with her cousin and the defendant at the defendant's house, that there were pending drug charges against her, and that she was aware of a disposition offer made by the state in her case. She also testified that her understanding of the offer was that she would not be charged as a person who is not drug-dependent in exchange for her testimony in the defendant's case, and that she would not be charged with an additional narcotics crime.

On cross-examination, Morey testified that she had not asked for the plea bargain, but that it was volunteered. When asked who volunteered the offer, the court allowed Morey to invoke the attorney-client privilege. This was the only remaining question not answered to which an objection was sustained. All of the additional information claimed by the defendant, in his brief, to have been improperly protected by the attorney-client privilege was, in fact, obtained from the witness after defense counsel rephrased his questions at the direction of the court.

Even if the witness should not have been allowed, however, to invoke an attorney-client privilege to exclude the information requested in the one unanswered question, the failure to have that answer presented to the jury did not interfere with the defendant's right to confront the witness, nor did it interfere with the defendant's right to impeach the credibility of the witness. On the basis of the record before us, we conclude that the jurors had sufficient information before them to draw an inference of bias if they wanted to

do so. Furthermore, because only one question was not eventually answered by this witness, the defendant's right to confront the witness was not violated.

## IV

The defendant's final claim is that the trial court improperly permitted the state's attorney to cross-examine a defense witness about his guilty plea to a separate drug related charge.

The following facts are relevant to the resolution of this claim. During the presentation of the state's case, the undercover detective testified that she had purchased cocaine from Aresco while they were in her car in a parking lot in Middletown. Aresco testified for the defense. On direct examination, Aresco denied that the transaction had taken place in the undercover detective's car, and testified that it had, in fact, occurred in Aresco's home. The state's attorney proceeded to impeach the witness with a transcript of statements he had made during his *Alford*[6] plea canvass to other drug related charges. Immediately prior to this colloquy, the trial court found that the statements made during the plea canvass were prior inconsistent statements and could be admitted solely for the purpose of impeaching the witness' credibility. The court then gave the jury a limiting instruction to this effect.

The defendant claims that it was improper for the trial court to allow the witness' statements from the prior plea canvass to come before the jury. He argues that the state's attorney exceeded the permissible scope of cross-examination when he inquired about the underlying facts of the witness' prior convictions, and that the transcripts used by the state's attorney were impermissible hearsay.

---

[6] *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

When prior convictions are admitted to impeach the credibility of a witness through a general inference of bad character, the facts underlying the conviction are generally inadmissible. *State* v. *Denby,* 198 Conn. 23, 30, 501 A.2d 1206 (1985), cert. denied, 475 U.S. 1097, 106 S. Ct. 1497, 89 L. Ed. 2d 898 (1986). However, " '[c]ross examination, in quest for the truth, provides a means for discrediting the testimony of a witness' "; id.; and matters that may not otherwise be relevant become so for the purpose of credibility. Id., 31–32.

The record shows a clear contradiction between Aresco's statements at his *Alford* plea canvass and those he made on the witness stand. This contradiction was one factor for the jury to utilize in weighing his credibility.

Furthermore, although statements at an *Alford* plea canvass are generally considered to be hearsay, they may be admitted under the prior inconsistent statement exception to the hearsay rule. See *State* v. *Whelan,* 200 Conn. 743, 748–49, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). Under circumstances such as those here, statements taken from the transcripts of an *Alford* plea canvass are admissible for the jury's consideration. *State* v. *Simms,* 14 Conn. App. 1, 3–4, 539 A.2d 601 (1988), aff'd, 211 Conn. 1, 557 A.2d 914 (1989).

We conclude that the trial court properly allowed the state to inquire, on cross-examination, where—in an undercover agent's car or in the witness' own home—the witness sold cocaine to Aresco.

The judgment is affirmed.