James MINNER, Petitioner–Appellant,

v.

Dareld KERBY, et al., Respondents–Appellees.

No. 93–2165.

United States Court of Appeals, Tenth Circuit.

July 21, 1994.

Stephen P. McCue, Asst. Federal Public Defender, Albuquerque, NM, for petitioner-appellant.

Gail MacQuesten, Asst. Atty. Gen. of New Mexico (Tom Udall, Atty. Gen. of New Mexico, with her on the brief), Santa Fe, NM, for respondent-appellee.

Before HOLLOWAY and McKAY, Senior Circuit Judges, and THEIS, Senior District Judge.*

---

* The Honorable Frank G. Theis, Senior United States District Judge for the District of Kansas, sitting by designation.

THEIS, Senior District Judge.

Appellant, James Minner, was convicted in state court in New Mexico of possession of cocaine with intent to distribute. After trial, a supplemental information was filed charging that appellant was a fourth habitual offender. Minner exhausted his state appeals and state habeas corpus remedies. Minner then petitioned for habeas corpus relief in federal court. The District Court denied his petition, and Minner timely appealed. We affirm.

## I. Facts and Procedural History

On May 10, 1985, the Albuquerque Police Department ("APD") executed a search warrant for My Cafe, a business owned by James Minner. As the officers appeared at the cafe, Minner walked quickly toward the parking lot. Officer Gonzales testified that he saw Minner throw a baggie with something in it under a van. Soon after Minner passed the van, he stopped and was handcuffed. Minner was searched, and over $600 in cash (mostly $20 bills) was found on Minner's person. A search of the cafe revealed no drug dealing paraphernalia. The APD later returned the cash to Minner at the direction of the city attorney.

Minner denies throwing anything under the van, and the defense presented the trial testimony of Roy Howard, a ten-year-old boy, who claims to have seen someone else throw the baggie. According to Officer Flores, Howard pointed in Minner's direction and told him that "that guy" threw something under the van. At a pretrial motion hearing, Minner presented the testimony of two other children who were at the scene of the arrest. These two children were not called as witnesses at trial.

After Minner was handcuffed, Officer Flores approached, and Officer Gonzales told Flores to look under the van because Minner had thrown something under it. Flores recovered a baggie which contained eight small envelopes of the type used for razor blades. Flores put the baggie back under the van as he found it so it could be photographed. The baggie was then given to Officer Sanchez, who was in charge of inventorying the evidence recovered.

The officers testified at trial that the type of envelope in the baggie is often used for packaging cocaine. Three of the envelopes were labeled "½;" one was labeled ".55;" and four envelopes were unmarked. Gonzales testified that he saw white powder in the envelopes; Flores testified that he saw no powder. Gonzales testified at trial that usually three or more packages of cocaine together suggests that the packages are ready for sale. Gonzales further testified that drug dealers sometimes mark the weight or value of drugs on the envelopes.

According to the evidence room records, the baggie was checked out to Dan Green, a 7–month chemist trainee at the APD criminalistics laboratory. Green's laboratory notes indicate that he conducted preliminary tests on the contents of four of the individual packages. The results were that all four presumptively contained cocaine. The notes indicate that pursuant to standard laboratory procedures, Green then combined the contents of all the envelopes to perform substance tests which established to a reasonable scientific certainty that the powder was cocaine. Green noted that all eight packages had contained powder. Green found that in total, there were 3.11 grams of cocaine at 43% purity.

The State did not call Green at Minner's trial. Rather, Martin Brady, supervisor of the APD criminalistics laboratory, testified and was allowed to read Green's notes. Brady testified that it appeared Green had followed proper department procedures in handling the contents of the baggie. Brady admitted that he could only surmise that the powder in each envelope was cocaine because only four had been individually tested. Brady estimated that the tests Green conducted would require from .2 to .25 grams of powder. Brady testified that Green's laboratory technique was pretty good. Green quit his job on December 6, 1985. Green was last thought to live in California.

Melissa Hughes, an APD chemist, testified as to her testing of the baggie's contents. She testified that she found 2.73 grams of cocaine at 47% purity. Hughes testified that her tests used up approximately .07 grams of

powder. Hughes had noted that there was powder leaking inside the evidence bag. Apparently, Green had tried to place the powder in a second baggie which was too small to hold it. Hughes testified that cocaine sold on the street is typically 20% pure. Brady and Hughes both testified that in measuring the purity of a controlled substance, there is a five percent margin of error.

Minner was indicted on the charge of possessing a controlled substance, cocaine, with intent to distribute, in violation of state statute. Prior to trial, Minner moved to suppress the cocaine, arguing that its condition had been substantially changed since its recovery. The court denied the motion. Trial was held, and the jury found Minner guilty of the offense charged.[1]

After trial, and after Minner's appeal, a supplemental information was filed charging that petitioner was an habitual offender with three prior felony convictions. The state district court held a hearing and thereafter entered an order finding that Minner was an habitual offender, which required an eight-year enhancement of Minner's sentence. Minner filed state habeas corpus petitions, which were denied at the district court level and on appeal. Minner then filed his petition for habeas corpus in federal court. The district court dismissed the petition, and petitioner timely appealed.

The district court denied Minner's petition for a certificate of probable cause. In order to reach the merits, this court grants the petition for a certificate of probable cause. 28 U.S.C. § 2253.

Minner makes several arguments on appeal. First, Minner contends that the trial court's admission of the police chemist's notes without the testimony of the chemist violated his right to confrontation of the State's witnesses. Second, Minner asserts that there was not sufficient evidence to support a charge of possession of cocaine with intent to distribute. Third, Minner argues that he did not receive effective assistance of counsel at his trial. Finally, Minner argues that the habitual offender charge was improper.

## II. Admission of Police Chemist's Hearsay Testimony

■ Appellant argues that his confrontation rights were violated because the court permitted the use of police chemist Dan Green's notes without Dan Green testifying at trial. Under the Sixth Amendment to the Constitution, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; ..." Generally, the Confrontation Clause prohibits the introduction of hearsay testimony unless it meets requirements of trustworthiness and necessity. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). Whether the Confrontation Clause has been violated is a question subject to *de novo* review. *Myatt v. Hannigan*, 910 F.2d 680, 685 (10th Cir.1990). Appellant argues that neither requirement has been met in this case.

■ The requirement of trustworthiness or reliability is met by a showing that the hearsay evidence (1) fits within a firmly rooted hearsay exception or (2) carries particularized guarantees of trustworthiness. *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991) (citing *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In this case the parties dispute whether a police chemist's notes fit within a firmly rooted hearsay exception as a business record under Federal Rule of Evidence 803(6) or a public record under Federal Rule of Evidence 803(8). *See United States v. Baker*, 855 F.2d 1353 (8th Cir.1988), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989) (police laboratory reports on controlled substances fit business records exception). *But see United States v. Oates*, 560 F.2d 45, 66–68 (2d Cir.1977) (police chemist report does not qualify under either exception). The court need not address this issue, however, because the notes have sufficient particularized indicia of reliability. The notes concern mechanically objective tests performed on the powder and were taken contemporaneously

---

1. The jury was instructed on simple possession.

with the performance of the tests. *See Reardon v. Manson,* 806 F.2d 39, 41, 43 (2d Cir.1986), *cert denied,* 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987). Green's computations were checked by Brady, and his results were verified by Hughes' testing of the substance. Green's notes concerning the condition of the evidence before he conducted his tests are consistent with the police officers' testimony. The court rejects appellant's argument that Green may have been motivated to falsify his notes in order to help secure a conviction. Even assuming, as appellant argues, that Green's position with the APD criminalistics laboratory was in jeopardy, he could not have helped his cause by falsifying reports. *See Id.* at 43. Green knew that Brady would look over his notes and had access to the evidence he was testing. *Id.* Furthermore, Brady testified as to standard laboratory procedures and testified that Green's notes indicate he followed those procedures in testing the substance at issue in this case. *See Manocchio v. Moran,* 919 F.2d 770, 775 (1st Cir.1990), *cert. denied,* 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991).

■■■■ As to necessity, this requirement is usually met by the prosecution's either producing the declarant as a witness at trial or showing that the witness is unavailable to testify. *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538–39. Dan Green did not testify at appellant's trial, and the State concedes that it did not show Green to be unavailable. However, recent Supreme Court precedent indicates that the unavailability requirement announced in *Ohio v. Roberts* may be limited to its facts, where the prosecution seeks to introduce prior testimony. *White v. Illinois,* — U.S. —, —, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992). At any rate, the unavailability requirement does not apply in situations where cross examination of the declarant would be of little value to the defense. *Reardon,* 806 F.2d at 41 (quoting *Roberts,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7). This case fits into that category. *See Manocchio,* 919 F.2d at 774 (dealing with admissibility of autopsy report). The APD chemists test numerous suspected controlled substances. It is unlikely that a chemist would remember any particular piece of evidence

he tested. *Id.* at 775; *Reardon,* 806 F.2d at 41. If Green had testified, he likely would have relied on his notes and on his knowledge of standard laboratory procedures in order to testify about the condition of the evidence when he received it and the steps he took in testing it. Furthermore, as the Second Circuit noted in *Reardon,* producing a police chemist as a witness rarely leads to any admissions which are helpful to the defense. *Id.* at 42.

The admission of Green's laboratory notes into evidence was proper under the Confrontation Clause.

### III. Sufficiency of Evidence

■■■ Appellant next argues that the evidence from which the jury found intent to distribute was constitutionally insufficient. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court held that the court, in considering a habeas corpus petition, must determine, "after viewing the evidence in the light most favorable to the prosecution, [whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789.

The government presented evidence of the following: that the appellant possessed approximately three grams of cocaine; that the cocaine appellant possessed was over 40% pure; that the cocaine was divided into eight bindles, most of which were marked as containing one-half gram units; and that at the time of his arrest, appellant had on his person over $600 cash, mostly in $20 bills. There was no direct evidence of distributions or attempted distributions. Furthermore, no drug selling paraphernalia was found at the cafe where appellant was arrested.

■■■ The prosecution may prove intent to distribute by either direct or circumstantial evidence. Appellant quarrels with each piece of evidence presented and fails to consider the evidence as a whole. Appellant correctly notes that other courts have found greater amounts of cocaine than that involved in this case to be consistent with personal use rather than distribution. *E.g., United States v.*

*Franklin,* 728 F.2d 994, 998–1000 (8th Cir. 1984) (35 grams); *United States v. Latham,* 874 F.2d 852, 854, 862–63 (1st Cir.1989) (28.35 grams). However, in addition to evidence of the amount of cocaine, the State presented evidence of the packaging and purity of the cocaine, as well as evidence that appellant had on his person a relatively large amount of cash, all of which support the State's argument that appellant intended to distribute the approximately three grams of cocaine he possessed. Viewing the evidence in the light most favorable to the prosecution, the court concludes that a rational trier of fact could find from that evidence that appellant possessed the cocaine with intent to distribute.

## IV. Effective Assistance of Counsel

Next, appellant contends that he was denied the effective assistance of counsel at trial. Appellant argues that he was prejudiced by several errors his counsel committed at trial.

█ The district court's determination that Minner was not deprived of his right to effective assistance of counsel is subject to *de novo* review. *United States v. Soto Hernandez,* 849 F.2d 1325, 1328–29 (10th Cir.1988). A panel of this court recently summarized the standards for evaluating claims of ineffective assistance of counsel in *United States v. Smith,* 10 F.3d 724, 728 (10th Cir.1993).

"The benchmark of an ineffective assistance of counsel claim is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). 'To establish ineffective assistance of counsel sufficient to warrant reversal of a conviction, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense.' *United States v. Pena,* 920 F.2d 1509, 1518 (10th Cir.1990), *cert. denied* [501 U.S. 1207], 111 S.Ct. 2802 [115 L.Ed.2d 975] (1991) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064)....

"The standard for determining whether an attorney's performance is deficient or not is that of reasonably effective assistance. In any case presenting an ineffective assistance claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances, and a defendant must demonstrate that counsel's conduct fell below an objective standard of reasonableness given prevailing professional norms. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. In making this determination, we are to avoid the distorting effects of hindsight and we are required to 'reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' *Id.* at 689, 104 S.Ct. at 2065. A defendant must overcome the strong presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance,' and we are reminded that there are 'countless ways to provide effective assistance' of counsel. *Id.*"

*Id.*

█ First, appellant notes that his trial counsel failed to object to the State's evidence that appellant had on his person at the time of arrest $600 in cash, mostly in twenty-dollar bills. The State used this evidence as part of its proof of intent to distribute. Appellant contends that this was not relevant evidence because he could have obtained the cash from a source other than drug trafficking, in particular, from his cafe business. Moreover, the cash had been returned to appellant.

The court disagrees with appellant's argument. The money evidence was relevant, and any objection to its admission would have been denied. Evidence that a defendant carried a large amount of cash is relevant to the question of whether he was trafficking in illegal drugs. That appellant had on his person $600 supports, along with the other evidence presented, the State's contention that Minner possessed the cocaine with intent to distribute. The possibility that the money came from another source goes to the weight of the evidence, but not to its admissibility. *United States v. Hooker,* 997 F.2d 67,

77 (5th Cir.1993) (quoting *United States v. Chagra*, 669 F.2d 241 (5th Cir.), *cert. denied*, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982)).

■ Second, appellant argues that his trial counsel improperly conceded that appellant was in possession of the cocaine. Again, the court disagrees. Counsel did not concede that Minner possessed the cocaine. Rather, in moving for directed verdict after the government presented its case in chief, counsel conceded that there was enough evidence of possession to create a jury question. This was not error. The testimony of Officer Gonzales and Officer Flores that they saw appellant throw the baggie whose contents later tested positive for cocaine provided sufficient evidence of possession to submit the issue to the jury.

■ Third, appellant argues that in addition to Roy Howard, counsel should have called as witnesses two other children who would have supported Roy Howard's testimony. Appellant has not met his burden in this case of overcoming the strong presumption that counsel acted within the wide range of reasonableness in this regard. Both children testified at the hearing on the motion to suppress, and both testified that they did not actually see someone throw something under the van. There are a number of reasons why counsel may have chosen not to call the other children as witnesses. In particular, counsel reasonably could have concluded, upon hearing the children's testimony at the suppression hearing, that there were credibility problems associated with these witnesses. As this court has previously held, the decision of what witnesses to call is a tactical one within the trial counsel's discretion. *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir.), *cert. denied*, 479 U.S. 836, 107 S.Ct. 134, 93 L.Ed.2d 78 (1986). Appellant has not demonstrated that he received ineffective assistance from his trial counsel.

## V. Appellant's Habitual Offender Status

Appellant was sentenced as an habitual offender. Appellant contests his habitual offender status on substantive and procedural grounds. Appellant argues that the State's failure to follow its own substantive and procedural law violated his right to due process under the Fourteenth Amendment to the Constitution.

■ As to substance, appellant argues he does not meet the statutory definition of habitual offender. Appellant notes that in 1966 the New Mexico Supreme Court held that the Habitual Offender Act did not apply to persons convicted under the Controlled Substances Act. *State v. Lujan*, 76 N.M. 111, 114–15, 412 P.2d 405, 408–09 (1966). However, in 1983, after the *Lujan* decision and before the conduct at issue in this case, the habitual offender statute was amended to include persons convicted of narcotics offenses. N.M.Stat.Ann. § 31–18–17(D) (Repl. Pamp.1990). Therefore, appellant's argument is clearly without merit.

■ As to procedure, appellant argues that raising his habitual offender status by supplemental information was improper under New Mexico law and, therefore, under the Fourteenth Amendment. Appellant argues that New Mexico criminal procedure requires an information to charge an offense. The supplemental information in this case did not charge an offense, but rather a status—that of habitual offender. *State v. Cruz*, 82 N.M. 522, 525, 484 P.2d 364, 367 (Ct.App. 1971). Therefore, according to appellant, the supplemental information is invalid. Again, appellant's argument is without merit. New Mexico law requires that habitual offender status be raised by information. N.M.Stat. Ann. § 31–18–19 (Rep.Pamp.1990). The State did not violate its own procedures, and thus did not violate due process, by charging appellant as an habitual offender by supplemental information. *See Martinez v. Romero*, 626 F.2d 807, 810 (10th Cir.), *cert. denied*, 449 U.S. 1019, 101 S.Ct. 585, 66 L.Ed.2d 481 (1980).

■ Finally, appellant argues that the supplemental information was improper because it amended the indictment without approval of the grand jury. The court disagrees. As discussed above, New Mexico law provides for charging habitual offender status by information rather than indictment. The statute authorizes charging habitual of-

fender status in a separate proceeding from the underlying criminal charge. *See State v. Silva,* 78 N.M. 286, 430 P.2d 783 (Ct.App. 1967). Therefore, Minner has no claim for violation of due process by failure to follow state law procedures. Furthermore, the Fifth Amendment right to grand jury indictment does not apply to states. *Aldridge v. Marshall,* 765 F.2d 63, 68 (6th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986) (citing *Hurtado v. People of State of California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884)). Therefore, Minner has no right, either under New Mexico law or under the United States Constitution, to a grand jury indictment as to his habitual offender status.

The petition for a certificate of probable cause pursuant to 28 U.S.C. § 2253 is hereby granted. The judgment of the District Court is AFFIRMED.