United States Court of Appeals,

Fifth Circuit.

No. 94-20907.

Sandy E. SHERMAN, Petitioner-Appellant,

v.

Wayne SCOTT, Director, Texas Department of Criminal Justice, Institutional Division, Respondent-Appellee.

Aug. 30, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, HIGGINBOTHAM and PARKER, Circuit Judges.

KING, Circuit Judge:

Sandy Sherman was convicted in Texas state court for delivery of a controlled substance and was sentenced to sixty years of imprisonment. After the Texas Court of Appeals affirmed his conviction, Sherman did not seek review in the Texas Court of Criminal Appeals. Instead, Sherman filed a state application for habeas relief which was denied by the Texas Court of Criminal Appeals. Sherman then sought habeas relief in federal district court, but the district court dismissed his petition with prejudice. Sherman filed a notice of appeal and sought a certificate of probable cause and appointment of counsel. The district court denied Sherman's request for counsel and granted a CPC on only one issue. Sherman, proceeding pro se, now appeals, arguing, *inter alia,* that this court has jurisdiction over all of his claims because a CPC may not be limited to a single issue. While we agree that the issuance of a CPC on any issue gives us

1

jurisdiction over the appeal from the entire judgment entered by the district court, we nevertheless find that Sherman's claims are without merit, and we affirm the district court's dismissal of his petition.

## I. BACKGROUND

In his federal habeas petition, Sherman argued that: (1) insufficient evidence to sustain his conviction was presented; (2) testimony from a chemist whom he was not allowed to cross-examine was admitted in violation of the confrontation clause; (3) a photocopy of money used in the drug transaction was improperly admitted into evidence; and (4) effective assistance of counsel at trial and on appeal was denied. The respondent moved for summary judgment. The district court, after carefully and thoroughly examining Sherman's claims, found that Sherman "ha[d] failed to demonstrate that Texas is holding him in custody in violation of the Constitution or a law or treaty of the United States" and granted the respondent's motion for summary judgment. Accordingly, the district court entered a final judgment, dismissing Sherman's petition with prejudice.

Sherman then filed a notice of appeal along with an application for a CPC. The district court determined that only Sherman's claim "concerning the admission of a laboratory tests report without the testimony of the police chemists who performed the tests" merited further review. Thus, the district court granted Sherman's motion "to the extent that it seeks a certificate of probable cause to appeal [the district] court's conclusion that

2

Sherman's conviction was obtained at the expense of his right to confront the chemists who performed the tests identifying a controlled substance."

Sherman appeals, reasserting the constitutional claims he raised in the district court. Additionally, Sherman contends that his right to appeal was impinged because the district court limited its grant of the CPC to one issue.

## II. DISCUSSION

A. Scope of the CPC

The law governing habeas procedure provides that:

> An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention arises out of the process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.

28 U.S.C. § 2253; *see also Drew v. Scott,* 28 F.3d 460, 462 (5th Cir.) (noting that "[w]e have no jurisdiction to address the merits of [an] appeal from the district court's denial of habeas relief unless we grant a CPC"), *cert. denied,* --- U.S. ----, 115 S.Ct. 5, 129 L.Ed.2d 906 (1994). Additionally, the Supreme Court has noted that a CPC "requires [a] petitioner to make a substantial showing of the denial of [a] federal right." *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (internal quotation omitted) (alteration in original); *accord Jacobs v. Scott,* 31 F.3d 1319, 1323 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 711, 130 L.Ed.2d 618 (1995). That is, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different

3

manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot,* 463 U.S. at 893 n. 4, 103 S.Ct. at 3394 n. 4 (citations omitted) (internal quotations omitted); *accord Jacobs,* 31 F.3d at 1323.

In the instant case, the district court granted a CPC on only one issue, apparently in an attempt to preclude Sherman from raising his other claims in this appeal. While the effort of the district court to highlight the only issue that it considered debatable is laudable, the partial grant of CPC was improper to the extent that it was designed to limit the jurisdiction of this court to that issue. The language of § 2253 gives courts of appeal jurisdiction over "the *final order* in a habeas corpus proceeding" after a CPC is granted. 28 U.S.C. § 2253 (emphasis added). Yet, as the majority of circuit courts addressing this issue have noted, "[n]othing in the language or legislative history of 28 U.S.C. § 2253 suggests that Congress intended this provision to permit a judge to limit the issues on appeal." *Van Pilon v. Reed,* 799 F.2d 1332, 1335 (9th Cir.1986); *accord Smith v. Chrans,* 836 F.2d 1076, 1079 (7th Cir.1988); *Houston v. Mintzes,* 722 F.2d 290, 293 (6th Cir.1983); *United States ex rel. Hickey v. Jeffes,* 571 F.2d 762, 765-66 (3d Cir.1978).[1]

---

[1]The Second Circuit alone has reached a different conclusion and allows a CPC to limit the issues to be heard on appeal. That court found that the "absence of explicit authority in § 2253 [was not] dispositive." *Vicaretti v. Henderson,* 645 F.2d 100, 101 (2d Cir.1980), *cert. denied,* 454 U.S. 868, 102 S.Ct. 334, 70 L.Ed.2d 171 (1981). Accordingly, the court allowed a limitation of CPCs, but also allowed a panel "to broaden the scope of the appeal if persuaded that such further consideration would be just under the circumstances." *id.* at 102; *accord Barber v. Scully,*

A construction of § 2253 that permitted a CPC that was limited to certain issues to limit the jurisdiction of the court of appeals to those issues is "[in]consistent with the general rule that appeals lie from final judgments or orders, not from determinations of legal issues." *Van Pilon,* 799 F.2d at 1335; *accord Smith,* 836 F.2d at 1079; *Hickey,* 571 F.2d at 765; *see also Houston,* 722 F.2d at 293 (rejecting limited CPCs and noting that petitioners "appeal[ ] not from issues decided by the district court, but from the final order[s] of the district court").

Additionally, "the purpose of requiring the petitioner to obtain a certificate of probable cause is to screen frivolous appeals." *Smith,* 836 F.2d at 1079. The instant case demonstrates that "[t]o the extent that *limited* certificates of probable cause represent an effort to eliminate frivolous issues from consideration on appeal, they have little practical effect." *Van Pilon,* 799 F.2d at 1336; *accord Smith,* 836 F.2d at 1079-80 (discussing *Van Pilon* ). As the *Van Pilon* and *Smith* courts recognized:

> Because we construe a habeas petitioner's notice of appeal as an application for a certificate of probable cause, those petitioners who are issued limited certificates will nevertheless obtain further consideration of the entire petition by this court. It appears likely that petitioners will also continue to argue the merits of excluded claims in the appeal for which a certificate was granted in the hopes of having those claims considered.

*Smith,* 836 F.2d at 1079-80; *accord Van Pilon,* 799 F.2d at 1336.

Finally, these courts' construction of the rule is

731 F.2d 1073, 1075 (2d Cir.1984).

5

jurisprudentially sound, because allowing limited CPCs would allow "a single district judge, a single circuit judge, or even a panel of the Court of Appeals to prescribe the issues which another panel may consider in support of, or in opposition to, a judgment." *Hickey,* 571 F.2d at 766; *accord Houston,* 722 F.2d at 293. Such a rule might lead to a situation where:

> the application of a settled principle of constitutional law would justify the reversal of a denial of habeas corpus relief, but the pro se applicant in applying for a certificate of probable cause did not articulate the settled ground with sufficient clarity. If a limited certificate could preclude consideration of the settled ground, it could force a panel of necessity to decide a novel or unsettled issue of constitutional law unnecessary.

*Hickey,* 571 F.2d at 766; *see also Houston,* 722 F.2d at 293 (noting this potential problem).

Accordingly, as the Third, Sixth, Seventh, and Ninth Circuits have held, a grant of CPC gives this court jurisdiction over the entire judgment entered by the district court disposing of all the claims asserted by the petitioner in the district court. We are, however, benefitted when district courts identify, as the district court has done here, those issues (if any) that they consider "debatable among jurists of reason."

B. Confrontation Clause Issues

Sherman contends that his Confrontation Clause rights were violated because a drug analysis report was admitted through the testimony of a laboratory supervisor instead of through the testimony of the chemists who prepared the report. We disagree.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be

confronted with the witnesses against him." U.S. Const., amend. VI. The Supreme Court has noted that:

> [T]he Clause envisions a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Ohio v. Roberts,* 448 U.S. 56, 63-64, 100 S.Ct. 2531, 2537-38, 65 L.Ed.2d 597 (1980) (internal quotation omitted). The Court, however, has also noted that "competing interests, if closely examined, may warrant dispensing with confrontation at trial." *Id.* (internal quotation omitted) (citation omitted). Accordingly, the Court repeatedly has found that "[w]hile a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable ... that view [is] unintended and too extreme." *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990) (internal quotation omitted). Thus, there can be little doubt that "the [Confrontation] Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause." *Id.* at 813, 110 S.Ct. at 3145.

In interpreting the relationship between the Confrontation Clause and the hearsay rules, the Supreme Court has instructed that:

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability."

7

> Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts,* 448 U.S. at 66, 110 S.Ct. at 2539. In *Roberts,* the Court noted that "[a] demonstration of unavailability ... is not always required," *id.* at 65 n. 7, 110 S.Ct. at 2538 n. 7, and the Court later clarified that "*Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding." *White v. Illinois,* 502 U.S. 346, 354, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992).

Thus, when determining whether an out-of-court statement admitted in a criminal trial violates the Confrontation Clause, we must examine whether the evidence contains particularized guarantees of trustworthiness. As the Supreme Court has stated, these "particularized guarantees of trustworthiness required for admission under the Confrontation Clause must ... be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Wright,* 497 U.S. at 820, 110 S.Ct. at 3149 (internal quotation omitted). Further, *Roberts* and other cases make clear that "statements admitted under a firmly rooted hearsay exception are so trustworthy that adversarial testing would add little to their reliability." *Id.* at 821, 110 S.Ct. at 3149 (internal quotation omitted). As to these other statements, the Supreme Court teaches that "evidence possessing particularized guarantees of

8

trustworthiness must be at least as reliable as evidence admitted under a firmly rooted hearsay exception ... [and] must similarly be so trustworthy that adversarial testing would add little to its reliability."  Finally, "[i]f the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule [and the Confrontation Clause] do[ ] not bar admission of the statement at trial."  *Id.* at 820, 110 S.Ct. at 3149.[2]

In applying this rule to laboratory reports, other circuit courts have determined that such reports contain the particularized guarantees of trustworthiness to keep them from violating a defendant's rights under the Confrontation Clause.  *See Minner v. Kerby,* 30 F.3d 1311 (10th Cir.1994);  *United States v. Baker,* 855 F.2d 1353, 1360 (8th Cir.1988), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989);  *Reardon v. Manson,* 806 F.2d 39 (2d.Cir.1986), *cert. denied,* 481 U.S. 1020, 107 S.Ct. 1903, 95 L.Ed.2d 509 (1987).  In *Baker,* on a direct appeal, the Eighth Circuit determined that "[w]hen made on a routine basis, laboratory analyses of controlled substances are admissible as business records under Federal Rule of Evidence 803(6)."[3]  *Baker,* 855 F.2d

---

[2]The Supreme Court also made clear that the indicia of reliability cannot come from corroboration with other evidence at trial, noting that "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial."  *Wright,* 497 U.S. at 822, 110 S.Ct. at 3150.

[3]The Federal Rules of Evidence provide that certain evidence is "not excluded by the hearsay rule even though the declarant is unavailable as a witness."  Fed.R.Evid. 803.  Included among such

9

at 1359. Because the reports were admitted as a business record, the Eighth Circuit found that "the district court acted under a firmly rooted exception" to the hearsay rule and therefore did not violate the Confrontation Clause. *Id.* at 1360.

In *Minner,* a habeas petitioner claimed that the admission of a police chemist's notes through the testimony of the chemist's supervisor violated the Confrontation Clause. The *Minner* court rejected this claim, finding that the notes had "sufficient particularized indicia of reliability" to satisfy the Clause. The court found the notes reliable because they "concern[ed] mechanically objective tests and were taken contemporaneously with the performance of the tests." *Minner,* 30 F.3d at 1314-15. The court also found the police chemist's notes trustworthy because the supervisor checked the computations of the chemist, and the results were verified by tests conducted by a second chemist. *Id.* at 1314-15. Additionally, the court noted that the supervisor "testified as to standard lab procedures and testified that [the chemist's] notes indicat[ed] that he followed those procedures in testing the

_____

evidence is:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by ... a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed.R.Evid. 803(6).

substance at issue." *Id.* Consequently, the *Minner* court concluded that "[t]he admission of [the chemist's] laboratory notes into evidence was proper under the Confrontation Clause." *Id.*

Finally, in *Reardon,* the Second Circuit found that a chemist's report admitted through the testimony of a supervisor did not violate the Confrontation Clause. *Reardon,* 806 F.2d at 41. Noting that the chemists who prepared the report analyzed thousands of compounds each year and were not likely to independently remember any particular test, the court concluded that "there would have been little potential utility in requiring the State to produce the ... chemists for cross-examination." *Id.* Accordingly, the *Reardon* court found that the evidence possessed sufficient indicia of reliability and did not offend the Confrontation Clause.

This court has not had occasion to address whether a laboratory report admitted through testimony by someone other than the individual who prepared that report violates the Confrontation Clause. Although in the present case the lab report was admitted as a business record, without objection, we need not address whether such reports qualify for a recognized exception to the hearsay rule[4] because we find that the report in question had the

---

[4]Rule 803's exceptions to the hearsay rule state that certain public records are not excluded even though the declarant is unavailable. Specifically the Rule allows admission of:

> "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activity of the office or agency, or (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel....*"

11

"particularized guarantees of trustworthiness" required by the Confrontation Clause.

Specifically, the laboratory analysis in the instant case was admitted through the testimony of the supervisor of the two chemists who prepared the report. The supervisor testified about his own qualifications and experience as well as the qualifications and experience of the two chemists who performed the tests. Additionally, the supervisor recounted the standard analytical procedures used to determine the composition of unknown substances. Finally, the supervisor testified that the report indicated that the chemists reached their results after performing these tests and following standard testing procedures. There seems little question that these routine procedures, performed and recorded also under standard laboratory procedures, were trustworthy. *See Minner,* 30 F.3d at 1314-15; *Reardon,* 806 F.2d at 41; *cf. United States v. McCormick,* 54 F.3d 214, 223-224 (5th Cir.1995) (noting, in the context of a parole revocation hearing, that laboratory report,

---

Fed.R.Evid. 803(8) (emphasis added). Additionally the Rule provides that:

> A statement not specifically covered by any of the ... exceptions but having equivalent guarantees of trustworthiness, [are admissible even if the declarant is unavailable], if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of the[ ] rules and the interests of justice will be served by admission of the statement into evidence.

Fed.R.Evid. 803(24).

12

although "not so inherently reliable to be automatically admissible in any revocation hearing," was shown by the chain of custody, step-by-step testing processes, and quality control procedures to be reliable).

Furthermore, like the majority of other circuits that have addressed this issue, we fail to see what benefit Sherman would have gained by cross-examining the chemists who prepared the report. As several courts have echoed, "production of the chemist who performed the test "rarely leads to any admissions helpful to the party.' " *Reardon,* 806 F.2d at 42 (quoting *United States v. Bell,* 785 F.2d 640, 643 (8th Cir.1986)); *accord Minner,* 30 F.3d at 1315; *cf. McCormick,* 54 F.3d at 224 (in parole revocation case, commenting that "[w]e cannot fathom what additional, enlightening information the district court could have gleaned had [the parolee] been permitted to cross-examine the laboratory technicians"). Because the testimony of the supervisor demonstrated that the report had particularized guarantees of trustworthiness and because cross-examination of the chemists who prepared the report would have been of little use to Sherman, we find that the admission of the report did not violate the Confrontation Clause.[5] *See Wright,*

---

[5]The Second Circuit's decision in *United States v. Oates,* 560 F.2d 45 (2d Cir.1977), concerned the admissibility of a laboratory report under the Federal Rules of Evidence, an issue that we do not reach in this case. Our conclusion is based on Confrontation Clause analysis set out by the Supreme Court; that is, the particularized guarantees of trustworthiness found in the report and the fact that cross-examination of the chemists would have been of little utility. *See Reardon,* 806 F.2d at 42 ("*Oates* was not decided on constitutional grounds but on an interpretation of the Federal Rules of Evidence....").

13

497 U.S. at 820, 110 S.Ct. at 3149 ("If the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule [and the Confrontation Clause] do[ ] not bar admission of the statement at trial.").[6]

---

[6]We are further persuaded that habeas relief is not proper on this issue because even if the laboratory report lacked the "particularized guarantees if trustworthiness" required by the Constitution, any error stemming from admission of the report was harmless. We have stated that "[t]he erroneous admission of prejudicial testimony justifies habeas corpus relief only when it is material in the sense of [being a] crucial, critical, highly significant factor." *Andrade v. McCotter,* 805 F.2d 1190, 1193 (5th Cir.1986) (internal quotations omitted) (second alteration in original); *see also Delaware v. Van Arsdall,* 475 U.S. 673, 679-84, 106 S.Ct. 1431, 1435-38, 89 L.Ed.2d 674 (1986) (noting that "Confrontation Clause errors [are] subject to ... harmless error analysis"). Additionally, the Supreme Court has stated that:

> Whether such an [evidentiary] error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438; *accord Cupit v. Whitley,* 28 F.3d 532, 536-47 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1128, 130 L.Ed.2d 1091 (1995); *Johnson v. Blackburn,* 778 F.2d 1044, 1051 (5th Cir.1985).

In the instant case, the laboratory report was not the only evidence that the material in question was cocaine. An undercover police officer testified that he purchased a substance that all parties to the transaction treated as cocaine. Additionally, that officer testified that a field test of the substance also indicated that it contained cocaine. Accordingly, because the evidence of the laboratory report was cumulative, it was not material in the sense of being a crucial, critical, highly significant

14

C. Other Claims

Sherman makes several additional claims, all of which we have considered and find to be without merit.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district's denial of Sherman's application for habeas relief.

---

factor; thus, even if the admission of the laboratory report had violated the Confrontation Clause, which it did not, it would not warrant habeas relief.